(167 P.3d 382)
No. 95,896

STATE OF KANSAS, *Appellee*, v. ERIC EUGENE HALL, *Appellant*.

Opinion filed September 21, 2007.

*Rachel Pickering* and *Jay Witt*, of Kansas Appellate Defender Office, for appellant.

*Ty Kaufman*, county attorney, and *Paul J. Morrison*, attorney general, for appellee.

Before HILL, P.J., GREEN and GREENE, JJ.

GREENE, J.: Eric Eugene Hall appeals the district court's decision to revoke his probation, arguing the court lacked jurisdiction due to the unreasonable delay by the State in prosecuting its motion to revoke. We agree with Hall and reverse the district court.

## *Factual and Procedural Background*

On August 26, 1998, Hall pled no contest to one count of aggravated battery and was thereafter sentenced to an underlying prison term of 12 months, with 36 months' probation. On June 23, 1999, the State filed a motion to revoke Hall's probation, alleging among other violations that Hall had been convicted of two counts of felony aggravated robbery on June 3, 1999, in Saline County. The Saline County charges resulted in Hall's imprisonment for 78 months, or until July 2005.

A bench warrant for Hall's arrest was issued in McPherson County in June 1999 but never executed during Hall's imprisonment on the Saline County conviction. Although the State claims through an appended affidavit to its brief on appeal that a detainer was lodged for Hall on November 17, 1999, neither the detainer itself nor the affidavit can be located in the record on appeal. The record contains copies of two letters from Hall to the district judge, however, referring to the detainer and requesting resolution of the pending revocation matter in McPherson County.

The first letter was dated February 10, 2002, and indicated that the unresolved detainer from McPherson County rendered Hall ineligible for reintegration and work release programs:

"I still have two more recommended programs to complete: pre-release reintegration program, and then work release. But these last two programs require minimum custody classification. I currently have medium custody and now cannot receive my minimum custody until resolving my detainer on case #980CR-155. Each of the two remaining programs are ten mo. to complete, which is another total of 20 mo. My release date is set for 9-13-2004 which is another 31 mo. So I

have 11 mo. now to resolve this detainer. So the defendant now moves and requests this court to appoint counsel over this matter . . . and allow me to proceed in forma pauperis."

Following this letter, an order to transport Hall back to McPherson County was drafted by the district attorney, executed by the district court, and filed on March 27, 2002, but neither the record nor the appellate briefs indicate what became of this order. There is no indication that Hall was ever made aware of the order, and counsel admitted at oral argument that there was no compliance with this order.

Hall's second letter was dated July 6, 2004, and again sought resolution of the pending detainer and probation revocation matter.

"Since [August 4, 1999] I've been trying to get this issue of violation of my conditions of probation on case no. 99-CR-155 taken care of. I took the route of trying to file a 180 day writ on this detainer, but was informed that such actions are not admissible for probation violations. So I'm seeking relief by submitting this letter.

". . . I would like to know if I am going to have to do more time or what . . . [to] get this matter resolved."

Hall then cites Kansas case law for the principle that "appeal courts frown on the fact that the courts should not take such lengthy time to hold such a hearing." He ends his letter with a request that the district court "get me back in your court room and hold this revocation hearing before my release." The record is silent as to any further McPherson County proceedings until Hall had served his sentence in the Saline County matter.

On July 18, 2005, after completion of his sentence for the Saline County matter, Hall was arrested pursuant to the bench warrant for the McPherson County matter. At a hearing on the State's motion to revoke probation, Hall moved for dismissal, arguing that the court had no jurisdiction due to the delay by the State in prosecuting the motion, citing *State v. Grimsley*, 15 Kan. App. 2d 441, 808 P.2d 1387 (1991). The judge rejected Hall's argument, stating in material part:

"[T]he issue becomes one of whether or not the State is obligated to bring the defendant back while he is in prison to do the motion to revoke probation. I have

not yet seen a case that speaks to that issue when it's in court. However, I agree with the State that the issues normally raised on failure to grant a speedy trial, so forth, or a detainer claim filed by a defendant is not applicable because it doesn't go to the issue of sentencing or speedy trial or any of those issues. They've already been sentenced. I've always proceeded under the assumption the State does not have that duty that they can simply wait until they're discharged, although I think the better practice is to bring them back, but that's not my call. Until the Supreme Court tells me they have to bring them back when they're in prison I don't feel it has application."

The district court then revoked Hall's probation and ordered him to serve the original 12-month sentence. Hall timely appeals.

### Standard of Review

Appellate courts review the revocation of a defendant's probation under the abuse of discretion standard. *State v. Walker*, 260 Kan. 803, 808, 926 P.2d 218 (1996). Judicial discretion is abused only when no reasonable person would take the view adopted by the trial court. *State v. Williams*, 268 Kan. 1, 8, 988 P.2d 722 (1999). Whether jurisdiction exists over such a matter is a question of law over which this court's scope of review is unlimited. *State v. Rocha*, 30 Kan. App. 2d 817, 819, 48 P.3d 683 (2002).

### Did the District Court Have Jurisdiction to Revoke Hall's Probation Given the Delay During His Incarceration on Other Charges?

The question framed by this appeal requires that we construe both a statutory mandate and that we apply constitutionally based due process considerations. The governing statute is K.S.A. 2006 Supp. 22-3716(b), which provides that "upon an arrest by warrant . . . the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged." Determining whether inaction constitutes an unnecessary delay depends upon the circumstances of each case. *Toman v. State*, 213 Kan. 857, 860, 518 P.2d 502 (1974).

The Due Process Clause of the Fourteenth Amendment to the United States Constitution limits procedurally and substantively the ability of the State to revoke a probationer's probation. A district court may revoke probation even if the term of revocation has

expired as long as "the proceedings were instituted during the term of the probation and the revocation occurs within a reasonable time thereafter. [Citation omitted.]" The court's jurisdiction to act, however, is "not without limit." *State v. Haines*, 30 Kan. App. 2d 110, 112, 39 P.3d 95, *rev. denied* 273 Kan. 1038 (2002). Clearly, the State is required to proceed in a timely and reasonable manner in order to meet the requirements of due process. See 30 Kan. App. 2d at 112. An unreasonable delay by the State in the issuance and execution of a warrant for the arrest of a probationer whose whereabout are either known or ascertainable with reasonable diligence may result in the State's waiver of the violation and entitle the defendant to discharge. *Haines*, 30 Kan. App. 2d at 112-13.

The unique issue framed herein is whether the State may be charged with unreasonable delay in such matters *when the defendant is serving time on an unrelated conviction from another county*. As noted by the district court, there does not seem to be any Kansas case law addressing this precise issue. Hall argues that the *Haines* waiver doctrine should apply due to the State's failure to resolve its revocation motion on a timely basis. The State relies on *State v. Nicholson*, 243 Kan. 747, 763 P.2d 616 (1988), in arguing that the failure to execute the bench warrant was caused by Hall's incarceration in another county and should not be seen as unreasonable delay.

*Nicholson* is instructive but not controlling here. In *Nicholson*, the defendant sought dismissal under the statute of limitations, claiming an unreasonable delay in executing a warrant because it had not been served for over 2 years. During that 2-year period, the accused was in the custody of the Kansas State Industrial Reformatory (KSIR). Although the State had not executed the warrant by arresting the accused, within 3 months of issuing the warrant, it notified KSIR of the existence of a warrant and requested that a detainer be placed on the accused if he was in custody there. Shortly after KSIR received the detainer request, it notified the accused of the detainer. Noting that the statutory definition for arrest is "the taking of a person into custody," (see K.S.A. 22-2202[4]) the *Nicholson* court held that the State was not expected to execute the warrant by arresting the defendant when he was

already in custody, noting that a person already in custody cannot be arrested. 243 Kan. at 749-50. For these reasons, the court held that there had been no unreasonable delay in executing the warrant. 243 Kan. at 750-51.

We distinguish *Nicholson* for several reasons: (i) Determining whether delay in executing an arrest warrant should toll the applicable statute of limitations requires a different analysis from determining whether there has been a due process deprivation in the case of prosecution delay in revoking probation; (ii) Nicholson had available to him the right to dispose of his detainer through the Uniform Mandatory Disposition of Detainers Act, K.S.A. 22-4301 *et seq.*, but made no attempt to do so; here that Act has no application; (iii) the court's decision in *Nicholson* was explicitly based upon construction of statutes that have no specific application or relevance herein, specifically K.S.A. 1987 Supp. 21-3106(3), K.S.A. 22-2202(4), and K.S.A. 22-2305; (iv) although impossible to arrest someone already in custody, it is quite possible to transport someone in custody to another county to answer charges there; and (v) the State has offered no explanation or excuse whatsoever for the noncompliance with the district court's order to transport Hall to McPherson County on March 27, 2002.

Despite no Kansas case law addressing these precise circumstances, we note the case law from other jurisdictions upon which this court relied in *Haines*, 30 Kan. App. 2d at 113, addressed the precise issue herein; these cases seem to require that a defendant be brought before the tribunal on revocation proceedings as long as his or her whereabouts is known, *even if those whereabouts for some or all of the period at issue are in confinement on other convictions*. See *People v. Diamond*, 59 Mich. App. 581, 588, 229 N.W.2d 857 (1975); *State v. Murray*, 81 N.M. 445, 449, 468 P.2d 416 (1970). The federal courts seem to be split on this question when framed in the context of federal parole violations. Compare *Gaddy v. Michael*, 519 F.2d 669 (4th Cir. 1975), and *Fitzgerald v. Sigler*, 372 F. Supp. 889 (D.D.C. 1974), to *Cook v. United States Attorney General*, 488 F.2d 667 (5th Cir. 1974). Particularly because the Uniform Mandatory Disposition of Detainers Act does

not apply here, we embrace the rationale of those cases that formed the conceptual underpinning for this court's decision in *Haines*.

Our court has held that the defendant has no obligation to show prejudice by reason of a delay under these circumstances because the State is deemed to have waived the violation. See, *e.g.*, *Haines*, 30 Kan. App. 2d at 113. Other courts have indicated that proper considerations in determining deprivation of due process in these circumstances include: (i) the impact of the delay on the defendant's ability to prepare a defense to the revocation proceedings; (ii) any other potential prejudice of delay in resolving the pending detainer; and (iii) the emotional harm or anxiety of the uncertainty of outcome and consequences for the pending violation. See, generally, *Gaddy*, 519 F.2d at 672-73. Although Hall can show no prejudice to his defense because the probation violation is established by reason of the conviction, other considerations weigh in Hall's favor: (i) the 6-year delay affected his custody status and may have denied his eligibility for rehabilitation programs during his period of incarceration and (ii) the delay apparently caused him some degree of emotional anxiety, as evidenced by his correspondence to the district court. Accordingly, even though a showing of prejudice may not be required, actual prejudice demonstrated by Hall supports our conclusion that the State should be barred by reason of the delay.

Considering the facts before us and specifically due to: (i) the State's inability to explain the delay; (ii) the fact that Hall could have been transported to McPherson County for revocation proceedings during his incarceration on the Saline County conviction; (iii) Hall's unanswered correspondence requesting timely resolution of the revocation motion; (iv) the failure of the State to comply with the district court's order to transport Hall back to McPherson County to resolve this matter; (v) the potential prejudice to Hall of the unresolved detainer and its impact on program eligibility during his incarceration; and (vi) the emotional anxiety of waiting 6 years to learn of the outcome of a revocation motion, we hold that Hall's due process rights were violated by the 6-year delay and the State must be barred from its belated efforts to prosecute the revocation motion.

Reversed and remanded with directions to discharge the defendant.