No. 95,896

STATE OF KANSAS, *Appellee*, v. ERIC EUGENE HALL, *Appellant*.

(195 P.3d 220)

Opinion filed October 31, 2008.

*Rachel L. Pickering*, of Kansas Appellate Defender Office, argued the cause, and *Jay Witt*, of the same office, was with her on the briefs for appellant.

*Ty Kaufman*, county attorney, argued the cause, and *Paul J. Morrison*, attorney general, was with him on the brief for appellee.

The opinion of the court was delivered by

LUCKERT, J.: This appeal raises the issue of whether a 6-year delay between issuance and execution of a probation revocation warrant was unreasonable, constituting a denial of due process that deprived the district court of jurisdiction over a probation violator

who was imprisoned on unrelated charges. To resolve this issue, we must determine two questions of first impression in Kansas: (1) Does the State waive a probation violation if it lodges a detainer but does not conduct a probation revocation hearing while the probationer is imprisoned on an unrelated felony conviction arising in another county and (2) if not, what standard applies for determining if an alleged probation violator's due process has been violated because of the delay?

These issues arose when Eric Eugene Hall was served with a probation revocation warrant 6 years after the warrant was issued in a McPherson County case. The warrant was served immediately upon Hall's release from prison on an unrelated felony conviction arising in Saline County. The Saline County conviction served as the basis for an allegation that Hall had failed to remain law abiding in violation of the terms of his McPherson County probation.

The probation revocation warrant was issued within weeks of Hall's conviction in Saline County. At that point he had served less than 1 year of his 3-year probation in the McPherson County case.

The State made no effort to execute the warrant. Instead, it apparently lodged a detainer with prison officials who had custody of Hall under the authority of the Saline County sentence, which had been ordered to run consecutive to the McPherson County conviction. We use the word "apparently" because there is no direct evidence establishing this fact in the record on appeal. Perhaps in an attempt to remedy this omission, the State added an appendix to its brief, which included an affidavit establishing that the detainer had been lodged shortly after the warrant issued. We cannot consider the affidavit, however, because it is not included in the record on appeal. See Supreme Court Rule 6.02(f) (2007 Kan. Ct. R. Annot. 37) (allowing appendix to appellant's brief to include "limited extracts from the record on appeal"; appendix is "not to be considered as a substitute for the record itself"); Supreme Court Rule 6.03(e) (2007 Kan. Ct. R. Annot. 40) (allowing appendix to appellee's brief and incorporating requirements and restrictions of Rule 6.02[f]).

Nevertheless, we accept that the detainer was lodged against Hall because the parties do not dispute its existence, and the record

contains several indirect references to the detainer and its effect. Most significantly, the record contains copies of two letters from Hall to the district judge in which Hall referred to the detainer and requested resolution of the pending revocation motion. The first letter was dated February 10, 2002, and indicated that the unresolved detainer from McPherson County rendered Hall ineligible for reintegration and work release programs. Because he was ineligible for these programs, Hall requested the appointment of counsel and a hearing. Apparently Hall did not receive a response because he wrote again on July 6, 2004, seeking resolution of the pending detainer and probation revocation motion.

Following the first letter, the State drafted an order to transport Hall to McPherson County. The order was executed by the district court and filed on March 27, 2002, but the record is silent regarding what became of this order. All we know is that there was no action until Hall was released from prison on July 18, 2005, after having served his sentence in the Saline County case. Hall was immediately taken into custody on the McPherson County warrant and transported to McPherson County. Counsel was appointed, and a hearing was promptly conducted.

At the hearing, Hall did not contest the fact that he had violated conditions of release. Nevertheless, relying on *State v. Grimsley*, 15 Kan. App. 2d 441, 808 P.2d 1387 (1991), he moved for dismissal on the basis that the district court lacked jurisdiction due to the State's delay in prosecuting the motion; Hall argued the delay violated the Due Process Clause of the Fourteenth Amendment to the United States Constitution.

The district judge rejected Hall's contention and stated:

"[T]he issue becomes one of whether or not the State is obligated to bring the defendant back while he is in prison to do the motion to revoke probation. I have not yet seen a case that speaks to that issue when it's in court. However, I agree with the State that the issues normally raised on failure to grant a speedy trial, so forth, or a detainer claim filed by a defendant is not applicable because it doesn't go to the issue of sentencing or speedy trial or any of those issues. They've already been sentenced. I've always proceeded under the assumption the State does not have that duty that they can simply wait until they're discharged, although I think the better practice is to bring them back, but that's not my call. Until the Supreme

Court tells me they have to bring them back when they're in prison I don't feel it has application."

The district court revoked Hall's probation and ordered him to serve the original prison sentence.

On direct appeal, the Court of Appeals reversed the district court and remanded with instructions to discharge Hall. *State v. Hall*, 38 Kan. App. 2d 465, 167 P.3d 382 (2007). The panel held that the State failed to timely execute the bench warrant against Hall. Relying on *State v. Haines*, 30 Kan. App. 2d 110, 39 P.3d 95, *rev. denied* 273 Kan. 1038 (2002), the panel concluded the State waived the probation violation, meaning Hall need not prove actual prejudice caused by the delay. 38 Kan. App. 2d at 469.

The panel recognized the unique issue in this case—*i.e.,* the delay being explained by the defendant's imprisonment—but concluded that was not a sufficient basis to deviate from the *Haines* waiver doctrine. In the panel's view, six factors in the record on appeal supported its conclusion: (1) the State's inability to explain the delay; (2) the fact that Hall could have been transported to McPherson County for revocation proceedings during his imprisonment on the Saline County convictions; (3) Hall's unanswered correspondence requesting timely resolution of the revocation motion; (4) the State's failure to comply with the district court's order to transport Hall back to McPherson County to resolve the revocation matter; (5) the unresolved detainer's potential prejudice to Hall and its impact on program eligibility during his imprisonment; and (6) the emotional anxiety of waiting 6 years to learn of the outcome of the revocation motion. 38 Kan. App. 2d at 471.

The State filed a petition for review, arguing the waiver doctrine should not apply and that Hall had failed to establish a due process violation. To support its arguments, the State cited additional authority, including a United States Supreme Court case that addressed whether due process requires execution of a parole or probation violation warrant when the defendant is imprisoned on an intervening sentence. We granted review. See K.S.A. 60-2101(b); K.S.A. 20-3018(b).

The questions raised in this appeal are governed by the overarching concern of assuring compliance with the Due Process

Clause of the Fourteenth Amendment to the United States Constitution. The Due Process Clause imposes procedural and substantive due process requirements whenever the State deprives someone of liberty, such as through the revocation of an individual's probation. *State v. Walker*, 260 Kan. 803, 808-09, 926 P.2d 218 (1996). Among the demands of due process are the requirements that a court have jurisdiction before depriving someone of liberty and, when revoking probation, that the court comply with the minimum procedural safeguards outlined in *Gagnon v. Scarpelli*, 411 U.S. 778, 36 L. Ed. 2d 656, 93 S. Ct. 1756 (1973), and *Morrissey v. Brewer*, 408 U.S. 471, 33 L. Ed. 2d 484, 92 S. Ct. 2593 (1972). *Walker* 260 Kan. at 809.

An appellate court considering whether a district court complied with these due process requirements applies an unlimited standard of review. This conclusion results from the overlay of several considerations that are a part of our analysis. First, the question of whether a court has jurisdiction is a question of law. *State v. Johnson*, 283 Kan. 649, 652, 156 P.3d 596 (2007); *State v. Rocha*, 30 Kan. App. 2d 817, 819, 48 P.3d 683 (2002). Second, the question of whether there has been a violation of constitutional due process rights also raises a question of law. *State v. Holt*, 285 Kan. 760, 774, 175 P.3d 239 (2008). Finally, a court's subject matter jurisdiction is defined by statute, and the interpretation of a statute is a question of law subject to unlimited review. *State v. Woolverton*, 284 Kan. 59, 67, 159 P.3d 985 (2007).

In reviewing an allegation that due process was violated because the district court did not have jurisdiction, the first concern is whether a district court has subject matter jurisdiction. Jurisdiction to revoke probation is governed by K.S.A. 22-3716(a), which provides that "[a]t any time during probation, . . . the court may issue a warrant for the arrest of a defendant for violation of any of the conditions of release or assignment." As the Court of Appeals stated in *Rocha*, a "reasonable construction" of K.S.A. 22-3716(a) is that "revocation of probation may properly occur after the term of probation has expired if a warrant, petition, or show cause order has been filed prior to expiration of the probation term." 30 Kan.

App. 2d at 820. Hall does not dispute that the warrant was issued during the term of his probation.

Subsection (b) of the same statute provides that "upon an arrest by warrant . . . the court shall cause the defendant to be brought before it without unnecessary delay for a hearing on the violation charged." Again, Hall does not dispute compliance with this provision; once he was arrested on the probation violation warrant he was immediately transported to McPherson County and a hearing was promptly held.

Nevertheless, even if the State has complied with K.S.A. 22-3716, a district court may be deprived of jurisdiction if an alleged probation violator is denied due process. See 30 Kan. App. 2d at 820. Due process demands that "the proceedings were instituted during the term of the probation and the revocation occurs within a reasonable time thereafter. [Citation omitted.]" *Haines*, 30 Kan. App. 2d at 112; see also *State v. Myers*, 39 Kan. App. 2d 250, 178 P.3d 74 (2008). In other words, the issuance of an arrest warrant does not extend a court's jurisdiction over a probationer indefinitely, and due process demands that the State act without unreasonable delay in the issuance and execution of an arrest warrant. 30 Kan. App. 2d at 112.

These decisions of our Court of Appeals are consistent with the general rule followed by other courts. See, *e.g.*, *United States v. Berry*, 814 F.2d 1406, 1410 (9th Cir. 1987); *United States v. Hill*, 719 F.2d 1402, 1405 (9th Cir. 1983); *United States v. Strada*, 503 F.2d 1081, 1084 (8th Cir. 1974). The general rule derives from the United States Supreme Court's decisions in *Morrissey*, 408 U.S. 471, and *Gagnon*, 411 U.S. 778. In the first of those decisions, the Court defined the due process standards that apply in a parole revocation hearing and held that a "revocation hearing must be tendered within a reasonable time after the parolee is taken into custody." 408 U.S. at 488. Then, in *Gagnon*, 411 U.S. at 782, the Court held that the *Morrissey v. Brewer* due process requirements applied to probation revocation hearings as well. Although the Court acknowledged "minor differences" between probation and parole, it held there is no "difference relevant to the guarantee of due process between the revocation of parole and the revocation

of probation." 411 U.S. at 782. Thus, because of the loss of liberty entailed, a person whose probation is subject to revocation—like the parolee whose parole is subject to revocation—is protected by due process rights and is entitled to a prompt revocation hearing after being arrested.

Although these decisions did not address whether due process required the timely execution of a warrant, "a long line of cases" has extended the reasoning of the decisions to mean that a delay between issuance and execution of an arrest warrant may be unreasonable, constituting a denial of due process that may deprive a court of jurisdiction over a probation violator. 2 Cohen, The Law of Probation and Parole § 24:24, p. 24-37 (2d ed. 1999); see, *e.g.*, *United States v. Gernie*, 228 F. Supp. 329, 338-39 (S.D.N.Y. 1964) (delay of over 11 years in service of warrant for violation of probation was unreasonable where probationer could have readily been located and apprehended at any time by exercise of reasonable diligence); *Barker v. State*, 479 N.W.2d 275 (Iowa 1991) (recognizing long delay might constitute due process violation).

In this action, neither party disputes these underlying principles. Rather, the State focuses upon the Court of Appeals analysis that the delay was unreasonable, causing a due process violation. Past Kansas cases, including the Court of Appeals decision in this case, measured the reasonableness of the delay by determining whether "prejudice to the defendant is shown by the delay, or there is an indication that the violation has been waived by the government." *State v. Wonders*, 27 Kan. App. 2d 588, Syl. ¶ 5, 8 P.3d 8, *rev. denied* 269 Kan. 940 (2000). If the State waived the violation, the probationer does not have to establish prejudice. *Haines*, 30 Kan. App. 2d at 113; *Wonders*, 27 Kan. App. 2d at 592. The determination of whether inaction constitutes an "unnecessary delay depends upon the circumstances of each case." *Toman v. State*, 213 Kan. 857, 860, 518 P.2d 501 (1974) (discussing delay between arrest and hearing).

*Waiver*

In holding that the State had waived the probation violation by delaying execution of the warrant, the Court of Appeals relied upon

*Haines*, in which it was held that the State waived the prosecution of the probation violation when a hearing was not conducted until 16 years after a warrant was issued for a probation violation, a delay the panel considered unreasonable. In *Haines*, the probationer was not incarcerated; rather, he was working as a truck driver in Ohio. The only attempt the State made to find Haines was to send letters, one to his ex-wife and another to his mother. The letter to his mother was returned because of an insufficient address. The panel concluded the State's effort was insufficient and, as a result, the district court lacked jurisdiction because "an unreasonable delay by the State in the issuance and execution of a warrant for the arrest of a probationer whose whereabouts are either known or ascertainable with reasonable diligence may result in the State's waiver of the violation." 30 Kan. App. 2d at 112-13.

Similarly in other Kansas cases, the doctrine has been applied when the probationer was not incarcerated and the State had information that would have allowed execution of the warrant if reasonable diligence had been exercised. *E.g.*, *State v. Myers*, 39 Kan. App. 2d 250 (nearly complete absence of evidence as to efforts actually made by State to attempt service on probationer or to investigate his whereabouts); *State v. Bennett*, 36 Kan. App. 2d 381, 138 P.3d 1284, *rev. denied* 282 Kan. 792 (2006) (police had three possible addresses but made no attempt to serve for 2 years).

The State argues there is no comparison between these circumstances and the present case. Here, the State knew of Hall's location and there was nothing to investigate. Furthermore, the State took action by lodging a detainer with prison officials. Under those circumstances, according to the State, the waiver doctrine does not apply because it acted with the level of diligence required when a defendant is imprisoned on a consecutive sentence arising from unrelated charges.

*Defendant's Imprisonment*

In support of its argument, the State cites *State v. Nicholson*, 243 Kan. 747, 763 P.2d 616 (1988), a case which the Court of Appeals found distinguishable. In *Nicholson*, the defendant sought dismissal of criminal charges, claiming the statute of limitations

barred the prosecution because there was an unreasonable delay in executing the warrant that had not been served for over 2 years. During that 2-year period, Nicholson was in the custody of the Kansas State Industrial Reformatory (KSIR). Within 3 months of issuing the warrant, the State notified KSIR of the existence of a warrant and requested that a detainer be placed on Nicholson. Shortly after KSIR received the detainer request, it notified Nicholson of the detainer. During Nicholson's term of imprisonment at KSIR, he made no attempt to assert his right to dispose of the detainer pursuant to the Uniform Mandatory Disposition of Detainers Act, K.S.A. 22-4301 *et seq.* 243 Kan. at 748-49.

The *Nicholson* court described the narrow issue on appeal as "whether, under the facts of this case, the failure to execute the arrest warrant while appellee was incarcerated at the KSIR constitutes unreasonable delay." 243 Kan. at 748. Noting that the statutory definition for arrest is "the taking of a person into custody," the *Nicholson* court held the State was not expected to execute the criminal arrest warrant by arresting the defendant when he was already in custody. 243 Kan. at 749-50; see K.S.A. 22-2202(4) (defining "arrest"); see also *State v. Clark*, 222 Kan. 65, 67, 563 P.2d 1028 (1977) ("A detainer is a hold order or informal demand by one exercising public authority for the possession of a person already in lawful custody.").

The *Nicholson* court further emphasized the generally recognized principle that "a person already in custody cannot be arrested on an outstanding warrant from another county or jurisdiction." 243 Kan. at 750 (citing *Hayes v. United States*, 367 F.2d 216, 221 [10th Cir. 1966]; *State v. Bowman*, 106 Kan. 430, 435-36, 188 P. 242 [1920]; 6A C.J.S., Arrest § 5). For these reasons, the court held there was no unreasonable delay in executing the warrant. 243 Kan. at 750-51. The court stated: ·

"In this case, the delay in complying with the statutory requirements for execution of an arrest warrant was not 'unreasonable' because it was impractical, if not impossible, to arrest the defendant as long as he was already in custody. While it may have been possible for the Barton County Sheriff to secure the release of the appellee from the custody of the secretary of corrections for purposes of

executing the warrant and taking appellee before the magistrate in Barton County, he was under no obligation to do so." 243 Kan. at 750.

Here, the Court of Appeals panel noted several distinctions between *Nicholson* and this case. First, the panel stated that "[d]etermining whether delay in executing an arrest warrant should toll the applicable statute of limitations requires a different analysis from determining whether there has been a due process deprivation in the case of prosecution delay in revoking probation." 38 Kan. App. 2d at 470. Next, the panel observed that Nicholson had the right to dispose of his detainer through the Uniform Mandatory Disposition of Detainers Act but made no attempt to do so; whereas, according to the Court of Appeals, the "Act has no application" to this case. 38 Kan. App. 2d at 470; see, *e.g., State v. Julian,* 244 Kan. 101, 105, 765 P.2d 1104 (1988) (one who has been released from custody by parole, probation, or otherwise may not rely upon speedy trial provisions of Uniform Mandatory Disposition of Detainers Act); *Robison v. State,* 278 N.W.2d 463 (S.D. 1979) (the Interstate Agreement on Detainers Act [S.D. Codified Laws Ann. § 23-24A] not applicable to detainers lodged for parole violations).

Another distinguishing factor found by the Court of Appeals panel was that *Nicholson* involved the construction of statutes having no application or relevance to this case. Also, although it is impossible to arrest a person already in "custody," the panel stated that "it is quite possible to transport someone in custody to another county to answer charges there." 38 Kan. App. 2d at 470. The final distinguishing factor found by the Court of Appeals was that "the State has offered no explanation or excuse whatsoever for the noncompliance with the district court's order to transport Hall to McPherson County." 38 Kan. App. 2d at 470.

Rejecting *Nicholson,* the Court of Appeals examined cases from other jurisdictions. It noted federal authorities were split, but two out-of-state cases, which had been cited in *Haines,* supported the view that the State waived a violation if it did not serve a revocation warrant even if the probationer was in prison on other charges. The panel decided to "embrace the rationale of those cases that

formed the conceptual underpinning" for the *Haines* decision. 38 Kan. App. 2d at 470-71. The two decisions cited in *Haines* are *People v. Diamond*, 59 Mich. App. 581, 229 N.W.2d 857 (1975), and *State v. Murray*, 81 N.M. 445, 468 P.2d 416 (1970).

In the earliest of these two cases, *Murray*, the court did not explain the rationale of its decision in depth, but did state that the waiver rule was based upon due process. 81 N.M. at 449.

In the later of the cases, *Diamond*, the court looked to several federal cases discussing due process considerations in probation revocation proceedings. The Michigan court observed there were several questions those authorities did not answer. Regarding the question of whether due process required the prompt execution of the warrant, the court noted the holdings in *Morrissey*, 408 U.S. 471, and *Gagnon*, 411 U.S. 778, but concluded: "These cases however, do not address whether a warrant issued for a probation violation must be executed within a reasonable time before the defendant is imprisoned." 59 Mich. App. 2d at 587 n.4. Following other courts, the Michigan court determined it would require reasonable diligence in the execution of the warrant. Then, the court addressed the specific issue in this case, the impact of a probationer's incarceration on the waiver rule. In doing so, the court noted: "We are cognizant of the split of authority as to whether authorities must execute a warrant while the defendant is incarcerated or whether they may wait until defendant is released, and then execute the warrant. *Fitzgerald v. Sigler*, 372 F. Supp. 889 (D.D.C. 1974); *Cook v. United States Attorney General*, 488 F.2d 667 (CA5, 1974)." 59 Mich. App. 2d at 585 n.2. The Michigan court held the warrant must be executed even though the defendant was in prison.

## *Moody*

One year later, in *Moody v. Daggett*, 429 U.S. 78, 50 L. Ed. 2d 236, 97 S. Ct. 274 (1976), the Supreme Court also considered the split in decisions regarding whether authorities must execute a revocation warrant while the defendant is incarcerated or whether they may wait until the defendant is released. 429 U.S. at 79 n.1. In our case, the State did not cite *Moody* in its brief before the

Court of Appeals, but the district court discussed and relied upon the decision in making its ruling.

In *Moody*, a federal prisoner was released on parole with almost 6 years remaining to be served on his conviction for a federal rape offense. While on parole, Moody was arrested, convicted, and sentenced for two federal homicide offenses. Soon after his incarceration for the homicides, federal parole authorities issued but did not execute a parole violator warrant relating to the pending rape sentence. The warrant was filed as a detainer at the federal prison.

Moody, citing *Morrissey*, relied upon the requirement that parole revocation hearings be held promptly after arrest to argue that detainers must be executed and revocation hearings convened without substantial delay. Moody's request for a prompt hearing was denied, and the parole authorities indicated they would not provide a hearing until the warrant was executed at the completion of the homicide sentences. Approximately 4 years later, while still in custody for the homicides and with the parole violator warrant/detainer still unexecuted, Moody sought habeas relief in federal court. He claimed that the State's delay violated his due process rights and that the State deprived him of a protected liberty interest because the delay potentially increased the length of his incarceration in that he lost the opportunity to serve concurrent sentences.

The Supreme Court rejected his argument because Moody was not in custody on the warrant. The Court explained "the loss of liberty as a parole violator does not occur until the parolee is taken into custody *under the warrant*." (Emphasis added.) 429 U.S. at 87. Moody's loss of liberty before the execution of the warrant, according to the Court, was not due to the alleged violation of parole, but from his conviction for additional crimes while on parole. The Supreme Court held Moody "has been deprived of no constitutionally protected rights simply by issuance of a parole violator warrant. [There is] no constitutional duty to provide . . . an adversary parole hearing until [Moody] is taken into custody as a parole violator by execution of the warrant." 429 U.S. at 89; see *State v. Duke*, 10 Kan. App. 2d 392, 393, 699 P.2d 576 (1985) (K.S.A. 1984 Supp. 22-3716, requiring defendant to be brought before court without unnecessary delay *after* being arrested on

warrant issued for probation violation, complied with constitutional requirements).

Some courts have viewed the holding in *Moody* as meaning there cannot be a constitutional violation if a parole or probation revocation warrant remains unexecuted while the alleged violator is in prison. See, *e.g., State ex rel. v. Parole Auth.*, 66 Ohio St. 3d 121, 609 N.E.2d 546 (1993) (no due process liberty interest attaches until parolee is taken into custody via detainer; if loss of liberty is due to detention for new crimes, parole authority has no constitutional duty to hold prompt revocation hearing, even if requested by defendant); *Bush v. Canary*, 286 N.W.2d 536, 538 (S.D. 1979) (failure to give parolee a revocation hearing immediately after issuance of warrant of detainer did not violate due process since unexecuted warrant had no bearing on loss of liberty; incarceration was brought about solely because of another conviction).

Most courts, however, have concluded such a sweeping holding is not justified because *Moody* did not foreclose the possibility that a defendant could establish a liberty interest in a prompt hearing. For example, the Court carefully noted that Moody had not proven a loss of evidence because of the delay. 429 U.S. at 88 n.9. The narrow ruling seemed to leave open the possibility that had Moody established prejudice he would have succeeded on his due process claim. See, *e.g., Harris v. Day*, 649 F.2d 755, 761-62 (10th Cir. 1981) (explaining in a habeas proceeding, "[t]his court has required a showing of prejudice where there has been a delay in holding a parolee's parole revocation hearing after execution of a parole warrant"). As one commentator noted, "[I]f the alleged violator is incarcerated as the result of a new charge, in most cases *Moody* permits the warrant to be executed upon release from that custody. But an earlier resolution may be necessary if the alleged violator can show an infringement of a liberty interest." 2 Cohen, § 24:11, p. 24-18.

We agree with this reading of *Moody* in large part because the Supreme Court did not end its analysis with the conclusion that Moody had not been arrested on the revocation warrant. Instead, the Court considered various potential liberty interests raised by

Moody and concluded he was not able to meet the burden of establishing a constitutionally recognized interest.

First, the Court rejected Moody's suggestion that he was being deprived of the opportunity to serve his sentences concurrently. The Court concluded Moody did not have a right to a concurrent sentence but merely a hope. In fact, it was uncertain whether Moody would even be incarcerated if a revocation eventually occurred. Therefore, the eventual possibility that he would receive a concurrent sentence was too uncertain to constitute a liberty interest. 429 U.S. at 87-88.

Second, the Court concluded a liberty interest did not arise because of possible adverse impact on a prisoner's classification or eligibility for various rehabilitation programs. The Court reasoned that prison officials have full discretion to control conditions of confinement and Moody had "no legitimate statutory or constitutional entitlement sufficient to invoke due process." 429 U.S. at 88 n.9; see *Meachum v. Fano*, 427 U.S. 215, 49 L. Ed. 2d 451, 96 S. Ct. 2532, *reh. denied* 429 U.S. 873 (1976).

Third, the Court rejected the adverse impact upon a possible early release/parole date as a liberty interest. The Court concluded that a later hearing would provide Moody with the "same full opportunity to persuade the Commission that he should be released from federal custody as would an immediate hearing on the parole violator warrant." 429 U.S. at 88.

In addition, the Court listed several practical considerations supporting its reasoning that a hearing need not be conducted until the parole violator is taken into custody. Principally, the Court pointed out that information regarding a defendant's behavior while imprisoned will be highly relevant to a determination of whether to revoke parole. Additionally, the Court suggested a defendant may actually benefit from the delay because authorities would be inclined to require consecutive sentences if the decision were made immediately after a new conviction. Yet, if one sentence had been served before the decision was made, authorities might be inclined to determine that the defendant had been adequately punished for all of the misconduct. 429 U.S. at 84, 89.

### Reasonable Diligence Post-Moody

Although the Court in *Moody* noted the split of authority regarding whether it was reasonable to delay execution of a revocation warrant when the probationer or parolee was incarcerated on an intervening conviction, it did not resolve the split in explicit terms. Yet, its holding—*i.e.,* that due process does not require that violation warrants be executed while the alleged violator is incarcerated on other charges—is consistent with the line of previous cases which had held that "while a revocation warrant must be executed within a reasonable time [citation omitted], incarceration in a state institution has been held to be a good reason for delay in execution of the warrant." *Small v. Britton,* 500 F.2d 299, 301 (10th Cir. 1974); see, *e.g., Taylor v. Simpson,* 292, F.2d 698 (10th Cir. 1961); *Thomas v. United States Board of Parole,* 354 F. Supp. 273 (D. Kan. 1973); *Rossello v. United States Board of Parole,* 261 F. Supp. 308 (M.D. Pa. 1966); 2 Cohen, § 24:24, p. 24-38. Moody had been sentenced to prison for 10 years for the crimes committed while on parole. Thus, the Court approved a possible delay in executing the warrant that was longer than the 6-year delay involved in this case. On the other hand, the holding in *Moody* is inconsistent with the line of cases followed in *Diamond, Murray,* and the Court of Appeals decision in this case, which held that the State violated due process by not serving the warrant while the alleged violator was incarcerated.

Consequently, consistent with *Moody,* we hold that if an alleged probation violator is incarcerated as the result of a new felony conviction arising in another county, the State does not waive a probation violation if it lodges a detainer but does not execute a probation violation warrant while the alleged violator is imprisoned on a consecutive sentence. See *Nicholson,* 243 Kan. at 749 (it is impractical, if not impossible, to arrest a defendant who is already in custody; no obligation to seek temporary release from custody for purpose of executing warrant).

### Hall's Asserted Liberty Interests

Yet, as we have discussed, even though due process does not demand that a probation violation warrant be executed before an

alleged violator is released from custody after having served the sentence for an unrelated felony conviction, an earlier resolution may be necessary if the alleged violator can show an infringement of a liberty interest.

This raises the question of the possible remaining constitutional limits. In this context, post-*Moody*, courts have adopted various approaches to determine if a delay in executing a violation warrant violates due process. See 2 Cohen, §§ 24:22 to 24:24. One approach is the one traditionally used in Kansas—a showing that prejudice has resulted from the delay. See 2 Cohen, § 24:23; see also *State v. Wonders*, 27 Kan. App. 2d 588, Syl. ¶ 5, 8 P.3d 8, *rev. denied* 269 Kan. 940 (2000) (no "due process violation unless prejudice to the defendant is shown by the delay, or there is an indication that the violation has been waived by the government"). While the other approaches include other factors, prejudice caused by the delay is always an important factor. 2 Cohen, §§ 22:22 to 24:24. We see no persuasive reason to create a different test for this circumstance than the prejudice test Kansas courts have utilized in other contexts.

Therefore, we examine whether Hall was prejudiced by the delay. In this regard, Hall and the Court of Appeals raised several considerations.

Hall raised an argument of potential prejudice in his letters to the district court when he complained the detainer prevented him from participating in rehabilitation programs in prison. The Supreme Court rejected this basis in *Moody*, 429 U.S. at 88-89 n.9, and Hall has not established why a different result should be reached under Kansas law. As with the federal procedure, Kansas corrections officials have discretion in determining what programs will be available and who will qualify for those programs. As such, a liberty interest does not arise. See *Schuyler v. Roberts*, 285 Kan. 677, 175 P.3d 259 (2008).

The Court of Appeals found potential prejudice because of the "emotional anxiety" attached to waiting to learn of the outcome of the revocation motion. We disagree with the Court of Appeals' conclusion that this created a right to due process. "A defendant incarcerated for a reason other than the delay in the hearings can-

not properly attribute his anxiety at being incarcerated—or the prejudice it implies—to the hearing delays." *State v. Benjamin*, 929 A.2d 1276, 1283 (Vt. 2007). Moreover, under the circumstances of this case, Hall knew he had violated his probation because he was convicted of crimes committed while he was on probation, and he knew the Saline County sentence was consecutive to the McPherson County sentence.

Also, there has been a suggestion that Hall might receive a concurrent sentence and the delay would eliminate the possibility. This suggestion has no merit because it was not possible for Hall to receive a concurrent sentence. First, the sentence in Saline County was ordered by that judge to run consecutively. The judge hearing the McPherson County revocation motion did not have jurisdiction to modify that sentence. Furthermore, because Hall committed the Saline County crimes while on probation in McPherson County, a consecutive sentence is mandatory:

"Any person who is convicted and sentenced for a crime committed while on probation, assigned to a community correctional services program, on parole, on conditional release or on postrelease supervision for a felony *shall serve the sentence consecutively* to the term or terms under which the person was on probation, assigned to a community correctional services program or on parole or conditional release." (Emphasis added.) K.S.A. 21-4608(c).

Thus, it was well established that Hall could not serve concurrent sentences.

A final consideration is one raised in *Moody, i.e.*, the possibility the delay would impair the ability to present evidence. Even though Hall admits his violation, the prejudice may arise if there is an actual loss of evidence regarding mitigating circumstances that would be presented to influence the court regarding disposition. See *United States v. Williams*, 558 F.2d 224, 227 (5th Cir. 1977) ("[I]n revocation cases, even if the prisoner admits the violation, he may be prejudiced if delay has impaired his ability to present evidence of mitigating circumstances that might affect the decision to incarcerate him and the conditions of incarceration."); *Parham v. Warden*, 172 Conn. 126, 134, 374 A.2d 137 (1976) ("To establish that a delay has produced a denial of due process, the person arrested must show that actual significant prejudice to him has re-

sulted."). Again, Hall failed to show or even argue that he has suffered actual prejudice in his ability to offer a defense. See, *e.g.*, *Harris v. Day*, 649 F.2d 755, 761-62 (10th Cir. 1981) (holding that, absent showing of prejudice, delay in holding revocation hearing on parole revocation warrant does not violate parolee's due process rights). Therefore, this approach to due process affords Hall no relief.

Hall offers no other potential liberty interest. Therefore, under the circumstances of this case, Hall has failed to establish prejudice or otherwise establish that a liberty interest was infringed. Consequently, the district court correctly determined that the State did not have to execute the warrant and immediately conduct a hearing on the motion to revoke probation. The district court had jurisdiction to revoke Hall's probation.

The decision of the Court of Appeals is reversed, and the district court's revocation of Hall's probation is affirmed.