NOT DESIGNATED FOR PUBLICATION

No. 116,847

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER ALLEN MICHAEL JONES,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; STEPHEN J. TERNES, judge. Opinion filed December 1, 2017. Affirmed.

*Rick Kittel*, of Kansas Appellate Defender Office, for appellant.

*Angela C. McDaneld*, legal intern, *Lesley A. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., GREEN, J., and MERYL D. WILSON, District Judge, assigned.

PER CURIAM: Christopher Allen Michael Jones entered into a plea agreement in which he pled guilty to one count of indecent liberties with a child. Granting a dispositional departure, the district court sentenced him to 36 months' probation with an underlying prison sentence of 120 months. After finding Jones violated the terms of his probation, the court revoked his probation pursuant to the public safety provision in K.S.A. 2016 Supp. 22-3716(c)(9). On appeal, Jones argues that the particularity requirements of the statute were not met and that an intermediate sanction was appropriate. Finding no error, we affirm.

1

The state charged Jones with one count of contributing to a child's misconduct and two counts of aggravated indecent liberties with a child after the victim, his 15-year-old girlfriend, was found staying with and engaging in sexual intercourse with Jones, who was 21 years old. Pursuant to a plea agreement, Jones pled guilty to one count of indecent liberties with a child, a severity level 5 felony. Jones' offense and criminal history score of B called for a presumptive prison term between 114 and 128 months. However, the court granted the defense's motion for dispositional departure, citing, among other things, a less-than-typical degree of harm and Jones' age and maturity level. Jones was sentenced to 36 months' probation with an underlying prison sentence of 120 months. Jones' probation came with several requirements, including completing sex offender treatment, updating any change in employment, residence, or phone number with the probation office, obtaining and maintaining full employment, and following all sex offender conditions provided by Community Corrections. Additionally, Jones was prohibited from contact with the victim or any person less than 16 years old.

On August 24, 2016, the district court issued a warrant for Jones for violating the terms and conditions of his probation. The violations were as follows:

"1. On July 29, 2016, the defendant reported staying at the Union Rescue Mission beginning July 28, 2016. The defendant failed to notify the Offender Registration unit within three days as required.

"2. On August 3, 2016, the defendant reported his current address listed on this warrant to his ISO but failed to notify the Offender Registration Unit within three days as required.

"3. On August 10, 2016, Ron Kempf, Shelter manager with the Union Rescue Mission, confirmed for ISO that the defendant did not check in there from July 31–August 2, 2016. The defendant's whereabouts were unknown during this time and he failed to report a change of address within 24 hours as directed.

"4. The defendant failed to perform and provide verification for job search activities as directed by his ISO for the weeks of July 31–August 20, 2016.

2

"5. On August 17, 2016, the defendant violated his sex offender condition of internet usage by posting five (5) adult job ads listed on backpage.com

"6. On August 19, 2016, ISO Clark and Poole conducted an on-site residence verification to the defendant's reported address of 2719 S. Emporia St. #905, Wichita, KS 67216. A female, Alyssa Bush, whom the defendant resides with confirmed for ISO Clark and Poole that she has a son that is one years of age in the same residence. The defendant is not to have any contact with children under the age of 16 and failed to report that there was a child present on his residence record.

"7. On August 19, 2016, the defendant reported to his ISO that he has already updated his address with the Offender Registration Unit and that he did so a few days prior to this date. On August 23, 2016, Deputy K. Lovinger confirmed for ISO that the defendant last updated his address on July 27, 2016.

"8. As of the filing date of this warrant, the defendant has not obtained or provided proof of obtaining a sex offender evaluation as court-ordered."

At the probation violation hearing, the court found Jones voluntarily waived his right to a hearing to contest the allegations and that he admitted to all allegations except allegation number 7, stated above. The defense offered an account of Jones' situation and the events that occurred after the sentencing hearing. The defense explained that although Jones was sentenced to probation in this case in August 2014, he was incarcerated in Oklahoma until July 2016—leaving less than two months between his release and the probation violation hearing to comply with the requirements of his probation. Upon his release from incarceration, Jones was homeless. For part of that time, Jones stayed with a family that had a small child, although Jones claims they knew of his status as a convicted sex offender and consented to him living with them. The defense recounted the difficulties Jones had finding employment. Finally, the defense noted that Jones found out upon release from incarceration that he had a two-year-old child with the victim in the underlying case.

3

The court first responded by recalling that Jones came to court with a B history, and that the underlying felony is a severity level 5 sex offense with a presumed prison sentence. Then the court said that while it would have been difficult for Jones to complete sex offender treatment during the period after incarceration, there was no evidence that he attempted to begin treatment. The court added that there was also no verification that Jones was seeking any legitimate employment opportunities. The court expressed further alarm with Jones' failure to update his address, his sexually oriented advertisements on the internet, and that he was living with a young child. The court revoked Jones' probation, stating:

> "I don't have any indication that granting you additional time would result in any different outcome here.
> "So the Court will revoke the probation, impose the underlying sentence. I will find pursuant to 22-3716(c)(9) that the safety of the members of the public will be jeopardized by Mr. Jones remaining on probation. Specifically, I will find that he's a sex offender, that he does not have employment, that he was not actively seeking employment or at least we have no verification of that. He was not actively seeking treatment, or at least we have no verification. He was living with a child when he was strictly prohibited from doing so, that child being under the age of 16. And finally, there were periods of time where we didn't know where Mr. Jones was. Those things lead me to believe that the public is not safe with Mr. Jones at large anymore."

Jones now appeals, claiming the district court abused its discretion in revoking probation without first applying intermediate sanctions.

*Did the district court abuse its discretion when it revoked Jones' probation instead of imposing intermediate sanctions?*

The defense first argues the lower court violated Jones' due process rights by revoking his probation without first imposing intermediate sanctions, which would provide this court with unlimited review. The defense also argues that should the court

4

find Jones' due process rights were not violated, the court committed reversible error by revoking Jones' probation.

When reviewing whether a district court complied with due process requirements when revoking probation, the appellate court has an unlimited standard of review. *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008). Among other things, due process requires the defendant be aware of the terms and conditions of probation, that the terms and conditions of probation be clear and specific, and upon violation allegations, that the defendant receive fair, written notice of the alleged violations. The alleged violations must be sufficiently specific to allow the defendant to fully respond. *State v. Scott*, No. 115,432, 2017 WL 2210442, at *3 (Kan. App. 2017). Here, the lower court did not violate Jones' due process rights. Jones was given sufficiently clear terms of his probation, as well as written notice of the alleged violations. The probation violation warrant detailed the list of alleged violations, and Jones was given the opportunity to respond to the allegations in court.

Because Jones' due process rights were not violated, the issue is whether the district court erred in bypassing intermediate sanctions and revoking Jones' probation. Where the issue is the propriety of the sanction imposed by the district court for a probation violation, the standard of review is unlimited. *State v. Rocha*, 30 Kan. App. 2d 817, 819, 48 P.3d 683 (2002). A district court may revoke probation upon a factual finding that the terms of probation were violated. *State v. Walker*, 260 Kan. 803, 808, 926 P.2d 218 (1996). The decision to revoke probation is within the discretion of the district court. *Swope v. Musser*, 223 Kan. 133, 136, 573 P.2d 587 (1977). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the view adopted by the trial court; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015). The party asserting the trial court abused its discretion bears the burden of showing such abuse of discretion. *State v. Rojas-Marceleno*, 295 Kan. 525, 531, 285 P.3d 361 (2012).

5

*Probation Revocation*

The district court's ability to revoke probation is limited by state statute. K.S.A. 2016 Supp. 22-3716(c)(1)(A)-(E) provides a system of intermediate sanctions the court must impose on an individual who violates the conditions of his or her probation. Part of that statute, though, allows the court to revoke probation instead of applying intermediate sanctions if it "finds and sets forth with particularity the reasons for finding that the safety of members of the public will be jeopardized or that the welfare of the offender will not be served by such sanction." K.S.A. 2016 Supp. 22-3716(c)(9)(A).

To satisfy the particularity provision, the court's findings must be specific and must contain sufficient detail. *State v. Huskey*, 17 Kan. App. 2d 237, Syl. ¶ 2, 834 P.2d 1371 (1992). Mere conclusory statements regarding probation violations do not meet the particularity requirement of the statute. *State v. McFeeters*, 52 Kan. App. 2d 45, 48-49, 362 P.3d 603 (2015). Instead, the district court must state the connection between the reasons for revoking the defendant's probation and the danger the defendant poses to the offender's welfare or to public safety if he or she remains on probation. *State v. Miller*, 32 Kan. App. 2d 1099, 1102-03, 95 P.3d 127 (2004). To make the connection, the findings must specifically articulate the reasons public safety will be jeopardized without revoking probation. *State v. Davis*, No. 111,748, 2015 WL 2137195, at *3 (Kan. App. 2015) (unpublished opinion).

In this case, the district court set forth with particularity its reasons for finding that public safety would be jeopardized and Jones' welfare would not be served by imposing intermediate sanctions. The court's statements referenced public safety and Jones' own welfare multiple times:

6

"My strong belief is people who are busy stay out of trouble. You wouldn't verify all that.

". . . So I do know some of what you were doing during that period, and I do know many of the things that you were supposed to be doing that you weren't doing.

. . . .

"Essentially this whole case is going the wrong direction. When I look at that and the background of having a B history, your background in this case as a Level 5 sex offender, I don't see that I have a whole lot of choice here. You stated that you wanted additional time, and I don't have any indication that granting you additional time would result in any different outcome here.

". . . I will find pursuant to 22-3716(c)(9) that the safety of the members of the public will be jeopardized by Mr. Jones remaining on probation. Specifically, I will find that he's a sex offender, that he does not have employment, that he was not actively seeking employment or at least we have no verification of that. He was not actively seeking treatment, or at least we have no verification. He was living with a child when he was strictly prohibited from doing so, that child being under the age of 16. And finally, there were periods of time where we didn't know where Mr. Jones was. Those things lead me to believe that the public is not safe with Mr. Jones at large anymore."

These are more than conclusory or general statements. Although some of the violations had little bearing on public safety, the findings that Jones was not seeking treatment and was not employed, was living with a child under the age of 16, and was posting sexually oriented advertisements on the internet, fully explain why public safety would not be served by imposing intermediate sanctions. The statements specify the potentially dangerous impact on public safety if Jones was allowed to remain on probation. Additionally, the court made statements referencing Jones' own welfare, expressing concern that he was not staying busy with work and that he was involved in problematic activities.

This court has addressed cases with similar issues. The facts of this case are different from those in *Padgett* and *Wesley*, and similar to the facts in *Dreier* and *Harding*. In *State v. Padgett*, No. 94,695, 2006 WL 3257450, at *1 (Kan. App. 2006)

7

(unpublished opinion), the district court did not meet the particularity requirement when it said that incarceration may be necessary "to get people on the right path," but did not connect the intermediate sanctions to public safety or the defendant's own welfare. In *State v. Wesley*, No. 111,179, 2015 WL 3868716, at *5 (Kan. App. 2015), the lower court also did not make a sufficient connection between imposing intermediate sanctions and an increased risk to public safety when it discussed the applicable criminal history score and stated that the nature of the underlying crimes, but not the probation violations, showed a disregard for public safety.

Conversely, in *State v. Dreier*, 29 Kan. App. 2d 958, 960, 34 P.3d 480 (2001), the district court stated the defendant's drug use would harm both the defendant and society. This connection was sufficient for the particularity requirement because it iterated that not revoking probation would jeopardize public safety and the defendant's welfare. *Dreier*, 29 Kan. App. 2d at 960. In *State v. Harding*, No. 110,677, 2014 WL 3630554 (Kan. App. 2014) (unpublished opinion), the judge articulated that the combination of the nature of the crimes and violations, criminal history, and the defendant's inability to comply with the terms of probation "rise to the level that [the defendant is] a threat to the public safety and to [himself]." This finding was enough to satisfy the particularity requirement under the statute because it linked the probation revocation with public safety and the defendant's welfare. *Harding*, 2014 WL 3630554, at *5.

Like in *Harding* and *Dreier*, the district court in this case made the sufficient connection that allowing Jones to remain on probation would jeopardize both public safety and Jones' own welfare. The district court's findings satisfy the particularity requirement under K.S.A. 2016 Supp. 22-3716(c)(9). Therefore, the district court did not abuse its discretion in revoking Jones' probation.

Affirmed.

8