NOT DESIGNATED FOR PUBLICATION

Nos. 115,512
115,513
115,514

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

THEODORE E. NANCE,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; TERRY L. PULLMAN, judge. Opinion filed June 30, 2017. Affirmed.

*Carl F.A. Maughan*, of Maughan Law Group LC, of Wichita, for appellant.

*Boyd K. Isherwood*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., GREEN and BUSER, JJ.

*Per Curiam*:  The trial court revoked Theodore Nance's probation after Nance committed two new crimes. Nance appeals the revocation of his probation, arguing that the trial court's decision was unreasonable because his mental health issues could be better treated while serving his sentence on probation than in prison. The State counters that the trial court's decision was reasonable because Nance's behavior showed that he was not amenable to probation. For reasons set forth below, we reject Nance's argument. As a result, we affirm.

1

On July 22, 2014, Nance was charged with one count of burglary, a severity level 7 person felony in violation of K.S.A. 2014 Supp. 21-5807(a)(1), and one count of theft, a severity level 9 nonperson felony in violation of K.S.A. 2014 Supp. 21-5801(a)(1), in Sedgwick County, case No. 14 CR 1792. Then, on September 2, 2014, Nance was charged with two counts of theft in Sedgwick County, case No. 14 CR 2229, each severity level 9 nonperson felonies in violation of K.S.A. 2014 Supp. 21-5801(a)(1). The two cases were consolidated under a plea agreement where the State agreed to recommend that Nance be sentenced to the standard low-box sentence for all counts based on his criminal history score of "A," with all counts running concurrently.

On October 15, 2014, Nance pled guilty to all counts. After entering his pleas, the trial court ordered that Nance undergo a psychological evaluation at Larned State Hospital (Larned) as part of his presentence investigation report. Before sentencing, Nance moved for both a dispositional and durational departure. Nance asserted that he was entitled to a departure for these reasons: (1) he had committed nonviolent crimes; (2) he had taken responsibility for his actions; and (3) he had intellectual disabilities and mental health issues. Nance also stressed that the Larned physicians suggested that he could benefit from more mental health treatment in a structured environment.

On February 3, 2015, Nance's joint motion and sentencing hearing was held. In addition to reasserting the arguments made in his motion, Nance argued that he would benefit from living in a group home while serving his sentence on probation because he had done well while living in a group home in the past. The trial court decided to grant Nance's dispositional departure request to probation, sentencing Nance to 24 months' probation with a controlling underlying sentence of 30 months' imprisonment followed by 12 months' postrelease supervision. The trial court found that the lack of physical violence associated with Nance's crimes as well as Nance's prior success in a group home constituted substantial and compelling reasons to grant the dispositional departure.

Just over a month later, on March 17, 2015, Nance was charged with committing new burglary and theft offenses in Sedgwick County case No. 15 CR 0849. As a result, the Department of Corrections requested that Nance's probation be revoked.

On May 26, 2015, Nance pled guilty to the new burglary count and no contest to the new theft count in 15 CR 0849. Nance had entered his pleas as part of an agreement with the State where the State agreed to recommend that Nance serve concurrent presumptive low-box sentences for the new burglary and theft charges, which would run consecutive to his sentences from 14 CR 1792 and 14 CR 2229. Before sentencing, Nance moved for a departure based on the same reasons he had provided in cases 14 CR 1792 and 14 CR 2229.

On January 1, 2016, the trial court held a joint hearing on Nance's probation violation in cases 14 CR 1792 and 14 CR 2229, Nance's motion for departure in case 15 CR 0849, and Nance's sentencing in case 15 CR 0849. At the start of the hearing, Nance stipulated that he had violated his probation by committing the new burglary and theft charges in 15 CR 0849.

Then, the trial court heard arguments on whether Nance should remain on probation in cases 14 CR 1792 and 14 CR 2229 or be granted a departure in case 15 CR 0849. The State requested that the trial court revoke Nance's probation and deny Nance's departure request. Nance argued that he should remain on probation in 14 CR 1792 and 14 CR 2229 and be placed on probation in 15 CR 0849 because his intellectual disabilities and his mental health issues could be better addressed while serving his sentence on probation than in prison. Alternatively, Nance argued that if the court was going to send him to prison, the trial court should run his underlying 30-month prison sentence in 14 CR 1792 and 14 CR 2229 concurrent to his impending prison sentence in

3

15 CR 0849. Nance argued that it would be manifestly unjust to "stack" the prison sentences against him.

Ultimately, the trial court revoked Nance's probation in 14 CR 1792 and 14 CR 2229, imposing Nance's controlling underlying sentence of 30 months' imprisonment followed by 12 months' postrelease supervision. Then, the trial court denied Nance's departure request in 15 CR 0849, also imposing a controlling sentence of 30 months' imprisonment followed by 12 months' postrelease supervision. Because it determined that it would be manifestly unjust to run Nance's sentences consecutively, given his mental health issues, the trial court ran Nance's 30-month prison sentences concurrently.

*Did the Trial Court Err by Revoking Nance's Probation?*

Appellate courts review appeals from the revocation of a defendant's probation for an abuse of discretion. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016). An abuse of discretion occurs if the trial court's decision was based on an error of law, based on an error of fact, or was otherwise unreasonable. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

In this case, Nance argues that the trial court's decision to revoke his probation in 14 CR 1792 and 14 CR 2229 was unreasonable. Although Nance recognizes that the trial court found that it would be manifestly unjust to run his 15 CR 0849 and 14 CR 1792 and 14 CR 2229 sentences consecutively, Nance argues that the trial court should have granted his request to remain on probation for his 14 CR 1792 and 14 CR 2229 sentences. Nance's appellate attorney argues that

> "[t]he court could have reinstated the probation and run the probation consecutive to the
> 30 month prison sentence imposed in 15 CR 849. The result of such a decision would be
> that the defendant would serve the 30 month sentence and thereafter, be given the

4

resources available through probation to assist with the defendant's mental health,

physical health and mental disabilities."

Nance's appellate attorney further argues that "[s]uch a ruling would result in the same period of incarceration while also giving [Nance] his best chance at rehabilitation."

While Nance would have been "incarcerated" in prison for the same time under Nance's appellate attorney's suggestion, his total sentences would have been longer. Once again, under the trial court's ruling, Nance is serving two concurrent 30-month prison sentences followed by 12 months' postrelease supervision for his crimes in all of his cases. Thus, under the trial court's ruling, Nance will serve sentence of 42 months for his crimes. Yet, under Nance's appellate attorney's suggestion, if the trial court had sentenced Nance to 30 months' imprisonment followed by 12 months' postrelease supervision for the 15 CR 0849 case and then ordered Nance to serve 24 months' probation for the 14 CR 1792 and 14 CR 2229 cases, Nance would serve a sentence of 66 months for his crimes. In addition, this 66-month total sentence calculation assumes that Nance would never violate his probation. If Nance violated his probation, Nance could serve up to a 108-month sentence for his crimes.

As a result, Nance's appellate attorney has argued that the trial court abused its discretion by not sentencing his client to *a longer sentence*. It is difficult to believe that any defendant would want his or her attorney to argue that the trial court abused its discretion by not imposing a longer sentence. Moreover, it is particularly difficult to believe that Nance, who was on probation about a month before violating his probation, would want to be placed on probation after serving his sentence in 15 CR 0849 when he could simply serve all of his sentences at once. Obviously, given Nance's criminal history and mental health issues, the likelihood of Nance violating his probation and being sent back to prison to complete his underlying sentences for 14 CR 1792 and 14 CR 2229 would be very high.

5

In the alternative, Nance's argument that the trial court abused its discretion by revoking his probation because his mental health issues could be better treated on probation is entirely unpersuasive. As emphasized by the State in its brief, Nance's actions did not show that he was amenable to probation. Indeed, when the trial court granted Nance's dispositional departure request, the trial court was skeptical that Nance could succeed on probation, but the court granted Nance's probation request anyway. Yet, in doing so, the trial court warned Nance:

> "[I]f [you] c[o]me back in front of [the Court] for a noncompliance with [your] mental health treatment or medication, or the commission . . . of any theft or burglary, if those matters [were] admitted or proven at a hearing, [you will] go to prison for the balance of the sentence. There [will] be no second chance."

Nance responded that he understood the trial court's warning. Nevertheless, just over a month later, Nance violated his probation by committing new theft and burglary offenses. Nance also told the trial court that he committed those crimes because he was not on his medication.

Clearly, it is reasonable for a trial court to infer that persons are not amenable to probation if they were on probation for only a month before committing the same crimes that resulted in them being sentenced to probation in the first place. Thus, the revocation of Nance's probation seems particularly reasonable given that Nance ignored the trial court's warning to not commit new crimes and to take his medication. As a result, even if Nance's mental health issues could have been better treated while serving his sentence on probation, the trial court's decision to revoke Nance's probation was reasonable based on the evidence alone.

Moreover, the trial court's reasons for rejecting Nance's argument that his mental health issues could be better treated while serving his sentence on probation than in prison were sound. In deciding to revoke Nance's probation, the trial judge stated:

6

"A lot of times when I sentence people, it comes down to a balancing test between realistic needs, realistic changes, for a meaningful reformation or rehabilitation of the offender versus realistic needs, realistic concerns for public safety.

. . . .

"I've gone through your history on the record, Mr. Nance. You've had multiple hospitalizations, you've had at least nine years of treatment through Comcare in the '80s, and then again in 2010. Yet your criminal history continues. Your first reported criminal conviction . . . was '95. And you've got them in '98, 2003, 2005, 2006, 2007, 2010, 2011, 2012, 2014, and now 2015. This, despite the efforts at mental health treatment, the efforts at medical management . . . the efforts of group homes and things like that.

"I agree with both counsel also, this is a very sympathetic, very sad case because I think you want to change. I think you want to improve. I just don't think at this point you're able to improve. I don't think you're able to take full advantage of the limited resources we have, and when you're not able to take full advantage, you're going to repeat your behavior, and that's what you've done in the past.

"I'm going to find that public safety [*sic*] based on your criminal conviction history set forth in your PSI outweighs the possible chances of offender reformation."

Thus, the trial court was not indifferent to Nance's mental health issues. Instead, the trial court did not agree with Nance that his mental health issues could be better addressed while serving his sentence on probation. This was because Nance's mental health treatment history and criminal history went back decades. As a result, Nance's past indicated that he could not reform himself outside of the prison setting. Further, the trial court found that Nance's continual criminal conduct put the public's safety at risk. Clearly, both of these conclusions were supported by Nance's past and by the nature of his crimes. Because the trial court's decision to revoke Nance's probation was entirely reasonable, we affirm the trial court's decision.

Affirmed.