IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 108,735

STATE OF KANSAS,
*Appellee*,

v.

GREYSON HURLEY,
*Appellant.*

SYLLABUS BY THE COURT

1.

When reviewing whether a district court complied with due process requirements in revoking a defendant's probation, an appellate court employs an unlimited standard of review.

2.

Although a district court's initial decision to impose probation is an act of grace, subject to judicial discretion, once the privilege of probation has been bestowed upon a defendant, he or she acquires a conditional liberty interest which is subject to substantive and procedural due process limits on its revocation. For instance, a probationer may not have his or her probation revoked unless it is made to appear that the probationer has failed to comply with the conditions of probation.

3.

The minimum constitutional due process rights possessed by a probationer include written notice of the claimed violations of probation; disclosure to the probationer of the evidence against him or her; the opportunity to be heard in person and to present evidence and witnesses; the right to the assistance of counsel; the right to confront and

1

cross-examine adverse witnesses; a neutral and detached hearing body; and a written statement by the factfinder as to the evidence relied upon and the reasons for revoking probation. The protections provided under K.S.A. 2011 Supp. 22-3716 satisfy all of the constitutional due process requirements.

4.

Where probation revocation is not accomplished in accordance with the required statutory provisions, resulting in a due process violation, the error is constitutional in nature and requires the State to persuade the reviewing court, beyond a reasonable doubt, that there is no reasonable possibility that the error affected the outcome. Where the State has not met its burden to prove that the denial of the defendant's due process rights at his or her probation revocation hearing was harmless, remand to the district court for a probation revocation hearing that comports with statutory and constitutional requirements is the appropriate remedy.

Review of the judgment of the Court of Appeals in an unpublished opinion filed March 28, 2014. Appeal from Saline District Court; JEROME P. HELLMER, judge. Opinion filed January 8, 2016. Judgment of the Court of Appeals affirming the district court is reversed. Judgment of the district court is reversed and remanded with directions.

*Heather Cessna*, of Kansas Appellate Defender Office, was on the brief for appellant.

*Charles Ault-Duell*, assistant county attorney, *Ellen Mitchell*, county attorney, and *Derek Schmidt*, attorney general, were on the brief for appellee.

The opinion of the court was delivered by

JOHNSON, J.: Greyson Hurley petitions this court to review the Court of Appeals' decision affirming his probation revocation. Hurley claims that the panel erred in

2

rejecting his claims that the district court lacked jurisdiction to reopen his probation revocation hearing after pronouncing its disposition and that the district court violated his due process rights by summarily revoking his newly imposed probation without hearing based upon the newly alleged probation violation of contemptuous conduct in court. Finding that the district court revoked Hurley's probation based upon a ground for which Hurley was not provided sufficient notice and opportunity to be heard, we reverse and remand to the district court for a new probation revocation hearing.

FACTUAL AND PROCEDURAL OVERVIEW

Hurley was serving a nonprison sentence of probation with community corrections supervision in three cases when the State filed a motion to revoke that probation on July 17, 2012. The motion alleged that Hurley had failed to: (1) report to his ISO as directed; (2) work faithfully at full time employment; (3) obey a curfew as set up by the intensive supervision officer (ISO); and (4) submit to urinalysis testing. A factual narrative of the alleged violations was provided with the State's request for a show cause hearing.

The district court conducted a probation revocation hearing on August 28, 2012, at which Hurley stipulated to the allegations contained within the show cause narrative and stipulated that he had violated the terms of his probation. The district court asked Hurley whether he understood that if the court accepted Hurley's stipulation, then the court would "revoke you in each case and then we'll talk about disposition?" After Hurley answered in the affirmative, the judge declared: "Alright, the court will accept the waiver in all three cases and the stipulation, I'll revoke."

After revoking Hurley's probation, the district court asked for the State's position on disposition. The prosecutor stated a number of reasons for the position that "the State's asking the court to go ahead and send Mr. Hurley to prison on these cases, this isn't a case

that needs to drag on for two and three shots at probation." But Hurley's ISO requested that the district court impose a 30-day sanction for each of the three cases in which he was serving probation, *i.e.*, a 90-day jail sanction instead of sending Hurley to prison. The ISO explained that he was recommending a reinstatement with jail sanction because the ISO had not supervised Hurley long enough to know if probation was a waste of resources.

The district court then provided Hurley an opportunity to address the court, during which Hurley admitted to taking opiates after suffering a work injury. He also admitted that he could not obtain work due to his criminal history, but he claimed that he was providing child care for his fiancée so that she could work.

After hearing from each of the represented parties, the district court discussed the pros and cons of continuing Hurley on probation, ultimately stating: "[T]he court's going to reinstate you on probation, the same terms and conditions, the same timeframe, but you are going to have to serve the 90 day sanction." Hurley responded by asking the district court if he could just go to prison, expressing that 90 days for a first violation was severe. The district court advised Hurley that going to prison was a viable option but that Hurley should talk to his attorney before committing to that option, and the court recessed the hearing.

When the hearing resumed, Hurley asked if he could serve the 90 days on weekends so that he could continue to provide weekday care for his fiancée's children. After the district court denied that request, the prosecutor objected to continuing the probation revocation hearing after the pronouncement of disposition, specifically stating: "I mean, it's a little unusual to have . . . the court impose the sentence and then come back and have a second bite at the apple, I mean. . . . That's kind of unfair to the parties by its nature."

4

After the district court explained that the only reason for the recess was to determine whether Hurley accepted the sanction or wanted to serve his full time, Hurley's attorney advised the court that Hurley "would do the 90 then if the court would allow him the opportunity to be placed back on probation." Following the judge's rejection of Hurley's request for a different ISO, the judge stated:

> "Alright, Mr. Hurley, I've revoked but I'll reinstate for the same terms and conditions for [an] additional period of 12 months, 90 day sanction to be served before you are eligible for that reinstatement, and make sure you follow all the rules that are in place and hopefully be successful, thank you."

While the prosecutor was seeking clarification on the start date of the 90-day jail sanction and the 12-month probation extension, the ISO interrupted to say: "Your Honor, he just told me to 'fuck off' and called me an asshole." The exchange in the courtroom proceeded as follows:

> "[Hurley]:  No, I didn't tell you, actually said . . .
>
> "[ISO]:  You said, 'Fuck you, asshole.'
>
> "[Hurley]:  I said that to somebody else.
>
> "[Judge]:  Well, there's nobody else in the courtroom.
>
> "MR. MARK MITCHELL:  Who else would you have said it to?
>
> "[Hurley]:  I didn't even look in you all's direction.
>
> "[Judge]:  Well, maybe not successful then.

"[Prosecutor]: Your Honor, at this point in time, I'm going to ask the court to find the defendant in contempt.

"[Hurley]: Contempt of what?

"[Defense counsel]: Just stop talking.

"[Prosecutor]: And—I'm sorry, Judge.

"[Judge]: Mr. Hurley, you are struggling and this isn't working.

"[Hurley]: I apologize.

"[Judge]: The court enters a finding of contempt now.

"[Prosecutor]: Judge, I think the court has seen what you are dealing with here, this particular person, I'm going to ask the court to reopen your—to reopen your ruling on the probation matters and send him to prison, I mean, what—how else are we supposed to deal with this, Judge, I just don't understand, I think that the appropriate sanction for his contemptuous actions is for the court to reconsider the sentence it just imposed and impose the prison sentence."

Hurley's attorney then asked for an opportunity to speak and apologized to the court for Hurley's actions. The district court responded that "it's not your apolog[y]; it is not your actions, it's Mr. Hurley's actions," but then when Hurley attempted to speak, the district court would not permit it, cutting him off with the statement: "No, Mr. Hurley, you do not understand, you need to be quiet, your attorney speaks for you."

Defense counsel then objected to the prosecutor's suggestion that the court could reopen the completed probation revocation hearing based upon a subsequent contemptuous act. Rather, the defense argued that the appropriate remedy for contempt is

6

to impose a separate penalty commensurate with the contemptuous act. Nevertheless, after some discourse, the court found "that the appropriate sanction is to *reopen this matter* and to consider whether or not Mr. Hurley should be reinstated, with a 90 day sanction or whether he should simply be remanded to serve his time." (Emphasis added.) The court settled on remanding Hurley to prison.

Thereafter, the court denied Hurley's request to speak, stating "[y]ou may speak with your attorney and she may file the appropriate motions, Mr. Hurley." Subsequently, Hurley sent the district court a letter, explaining and apologizing for his actions during the probation revocation hearing, concluding with the statement: "I hope this letter conveys to you that which [defense counsel] and myself could not that day and that you will understand that which I could not articulate in person to you due to the stress and your commanding presence."

The disposition section of the Journal Entry of Probation Revocation Hearing recited: "Defendant ordered to serve 90 day sanction and be reinstated on probation. Defendant then found in direct contempt of court for inappropriate comment. Court reconsiders disposition of probation and orders Defendant to serve original sentence." Then, under the description of probation violations, the journal entry included "Defendant convicted of direct contempt." The district court also filed a Journal Entry of Contempt Pursuant to K.S.A. 20-1203, reciting that after the defendant's contemptuous conduct, "the Court revoked the Defendant's probation, denied Defendant's *McGill* motion to modify his sentences, and remanded him to serve his original sentences."

REVOCATION OF PROBATION

On appeal to the Court of Appeals, Hurley stated one issue—whether the district court erred when it reopened the probation revocation hearing and revoked his probation

for contempt—but argued three reasons that the maneuver was erroneous. First, Hurley made the jurisdictional argument that once the district court had pronounced that it was reinstating probation, the pending probation revocation proceeding was concluded and that to impose another disposition required a new probation revocation hearing. Second, Hurley claimed a due process violation for revoking his reinstated probation on new grounds without providing him with the procedural rights to which he was entitled. Last, Hurley argued that the district court could not revoke his probation as a sanction for contempt because that would allow an "end-run" around the constitutional rights a defendant is guaranteed in probation revocation hearings. The Court of Appeals rejected all three arguments. *State v. Hurley*, No. 108,735, 2014 WL 1302609, at *8 (Kan. App. 2014) (unpublished opinion).

*Standard of Review*

Where the issue is the propriety of the sanction imposed by the district court for a probationer's violation of the terms and conditions of probation, the standard of review is an abuse of discretion. *State v. Rocha*, 30 Kan. App. 2d 817, 819, 48 P.3d 683 (2002). But where the question is whether the district court complied with due process requirements in revoking a defendant's probation, an appellate court employs an unlimited standard of review. *State v. Hall*, 287 Kan. 139, 143, 195 P.3d 220 (2008).

*Analysis*

The Court of Appeals began its analysis by determining that "the district court did not lose jurisdiction over its ability to modify, extend, or revoke Hurley's probation upon its initial decision to reinstate his term for an additional 12 months." *Hurley*, 2014 WL 1302609, at *4. That declaration appears to miss the point. Under the facts presented here, the question is not whether the district court retained the jurisdictional authority to modify, extend, or revoke Hurley's reinstated probation, but rather the issue is whether

8

the court's exercise of jurisdiction comported with statutory and due process requirements.

In that vein, the panel's reliance on the concept "that probation is a privilege rather than a right" to opine that it is appropriate for a court to summarily revoke a probation as a sanction for contempt is similarly misplaced. 2014 WL 1302609, at *8. Although the initial decision to impose probation is an act of grace, once the privilege of probation has been bestowed upon a defendant, he or she acquires a conditional liberty interest which is subject to substantive and procedural due process limits on its revocation. See *State v. Walker*, 260 Kan. 803, 808, 926 P.2d 218 (1996) (quoting *Black v. Romano*, 471 U.S. 606, 610, 105 S. Ct. 2254, 85 L. Ed. 2d 636 [1985]). For instance, "[a] probationer may not have his or her probation revoked unless it is made to appear that the probationer has failed to comply with the conditions of probation." *Walker*, 260 Kan. at 808. Accordingly, Hurley's contemptuous conduct would permit revocation of his probation only if it were determined to be a violation of his probation conditions.

The panel attempts to circumvent this obstacle by noting that Hurley stipulated to the probation violations which prompted the probation revocation hearing and opining that the "stipulation alone provided the district court adequate grounds to revoke Hurley's probation regardless of his subsequent outburst." *Hurley*, 2014 WL 1302609, at *5. The stipulation was, indeed, sufficient to support the district court's revocation of the existing probation. But after the court used the stipulation to revoke Hurley's probation, it chose the sanction of a reinstated probation for an additional 12-month term. In *State v. Hymer*, 27 Kan. App. 2d 1054, 1055, 11 P.3d 94 (2000), *rev'd on other grounds* 271 Kan. 716, 26 P.3d 63 (2001), a Court of Appeals panel relied on *State v. Royse*, 252 Kan. 394, 398, 845 P.2d 44 (1993), to hold that once a district court imposes a sentence of probation, it is powerless to modify or depart from the sentence, albeit the district court does have the power and jurisdiction to revoke the probation.

9

In this case, the court subsequently ordered Hurley to prison based upon his allegedly contemptuous statement to the ISO to which Hurley did not stipulate. The court's pronouncements from the bench, together with the filed journal entries, confirm that Hurley received the prison sanction for his courtroom behavior and not for the violations to which he had previously stipulated. That could not be accomplished as a modified sentence but only as a subsequent revocation.

To again revoke Hurley's probation, the district court had to conform with due process. In *Morrissey v. Brewer*, 408 U.S. 471, 488-89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), the United States Supreme Court established minimum due process rights for parolees and extended those rights to probationers in *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973).

> "Minimum due process includes written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him or her, the opportunity to be heard in person and to present evidence and witnesses, the right to confront and cross-examine adverse witnesses, a neutral and detached hearing body, and a written statement by the factfinder as to the evidence relied on and reasons for revoking probation. The probationer also has a right to the assistance of counsel." *State v. Billings*, 30 Kan. App. 2d 236, 238, 39 P.3d 682 (2002) (citing *Black v. Romano*, 471 U.S. 606, 612, 105 S. Ct. 2254, 85 L. Ed. 2d 636 [1985]).

K.S.A. 2011 Supp. 22-3716, the probation revocation statute in effect during the relevant time period in this case, has been determined to satisfy "all constitutional requirements" set forth in *Gagnon*. See *State v. Rasler*, 216 Kan. 292, 296, 532 P.2d 1077 (1975). That statute requires the ISO to "submit in writing a report showing in what manner the defendant has violated the conditions of release"; requires the district court to conduct a probation revocation hearing "in open court"; requires the State to carry its

burden of establishing the violation; requires that the defendant have the right to counsel; and requires that "[t]he defendant shall have the right to present the testimony of witnesses and other evidence on the defendant's behalf." K.S.A. 2011 Supp. 22-3716(b).

The panel's conclusory determination that Hurley received all of his "constitutionally-guaranteed due process protections" does not withstand closer scrutiny with respect to the district court's final revocation based upon the allegation of contempt. See *Hurley*, 2014 WL 1302609, at *5.

Although Hurley had an attorney that argued on his behalf, both before and after the alleged contempt, his counsel was not given the opportunity to insure that Hurley was provided all of the statutory protections to which he was entitled. For instance, Hurley was not provided with written notice of the manner in which he violated the conditions of probation, *i.e.*, what term or condition of probation prohibited the probationer from cursing at his ISO or from being held in contempt of court. Likewise, the State was not required to present testimony or evidence proving the alleged probation violation, but rather the ISO simply made an unsworn and unsolicited accusation to the judge. Because the State was not required to bear its burden of proving a probation violation, Hurley was denied any opportunity to confront and cross-examine under oath the witness against him, *i.e.*, the ISO.

Perhaps most importantly, Hurley was denied his due process right to have an opportunity to be heard prior to the final probation revocation. See *Walker*, 260 Kan. at 809 (At probation revocation hearing, probationer entitled to opportunity to show he or she did not violate the conditions of probation; or that there was justifiable excuse for any violation; or that revocation is not appropriate disposition.). As noted above, the defense counsel admonished Hurley to be quiet when he attempted to apologize and/or explain his conduct. The district court explicitly refused to let Hurley speak. And Hurley

11

obviously did not waive his right to be heard, as evidenced by his attempts to speak in court, as well as by his subsequent letter to the judge.

In short, the revocation of Hurley's probation was not accomplished in accordance with the statutory provisions that are necessitated by due process requirements. Because the error was constitutional in nature, the burden is on the State to persuade us "beyond a reasonable doubt that the error complained of will not or did not affect the outcome of the trial in light of the entire record, *i.e.*, proves there is no reasonable possibility that the error affected the verdict." *State v. Ward*, 292 Kan. 541, 569, 256 P.3d 801 (2011), *cert. denied* 132 S. Ct. 1594 (2012). Here, the State makes no such argument, instead contending that no error occurred. Accordingly, we remand to the district court for a probation revocation hearing that comports with statutory and constitutional requirements. *Cf. State v. Jackson*, 234 Kan. 84, 88, 670 P.2d 1327 (1983) (remanding for new probation revocation hearing where defendant denied the right to present witness at original hearing).

Reversed and remanded.