NOT DESIGNATED FOR PUBLICATION

No. 123,340

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

CHRISTOPHER D. MCGREGOR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed March 4, 2022. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Kristi D. Allen*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GREEN, P.J., ATCHESON and HURST, JJ.

PER CURIAM: Christopher D. McGregor appeals the trial court's revocation of his probation for his attempted robbery conviction, arguing that insufficient evidence established that he committed the new crime of criminal damage to property. McGregor also argues that in revoking his probation, the trial court wrongly punished him for having an evidentiary hearing on his alcohol-related probation violations. Yet, because the trial court properly revoked McGregor's probation, we affirm.

1

On June 22, 2018, McGregor forced a convenience store cashier to give him money and cigarettes before resisting arrest when stopped by the police. Because of this incident, the State charged McGregor with robbery, a severity level 5 person felony in violation of K.S.A. 2017 Supp. 21-5420(a), and interference with a law enforcement officer, a severity level 9 nonperson felony in violation of K.S.A. 2017 Supp. 21-5904(a)(3).

Eventually, McGregor entered into a plea agreement with the State in which the State agreed to amend his robbery charge to attempted robbery, a severity level 7 person felony, in exchange for his guilty plea. Under this plea agreement, the State also agreed to dismiss McGregor's interference with a law enforcement officer charge and to support McGregor's forthcoming dispositional departure motion. McGregor's criminal history score of B meant that his presumed mid-range sentence under the revised Kansas Sentencing Guidelines Act (KSGA) was 29 months' imprisonment. Additionally, McGregor's presentencing investigation report indicated that because McGregor was on probation in Oklahoma when he committed the attempted robbery, a special rule applied; that is, McGregor's presumed KSGA sentence was imprisonment because a KSGA special rule applied in his case too.

After McGregor pleaded guilty to attempted robbery in accordance with his plea agreement, McGregor filed his dispositional departure motion. In this motion, McGregor stressed that he had "a crippling addiction to PCP," which was "the root cause of the criminal activity involved in this case." And at his sentencing hearing, McGregor further stressed that he had recently taken steps to address his substance abuse problems. The trial court responded to McGregor's arguments by asking McGregor about his lengthy criminal and substance abuse history. The trial court and McGregor's exchange ended when McGregor told the trial court, "I'm sorry about [you all] having to take [your] time

2

up to deal with me. And for the record, I will show you that I can change and continue treatment, continue probation and successfully get off of it." At this point, the trial court granted McGregor's dispositional departure motion, sentencing him to 24 months' probation with an underlying sentence of 29 months' imprisonment followed by 12 months' postrelease supervision.

Even so, the trial court ended McGregor's sentencing hearing by giving McGregor the following warning about the necessity of complying with his probation conditions:

"I followed the plea agreement to the letter. You're getting your departure and not having the special rule imposed. You say all the right things today, starting with your apology and that you want to make a change and you're going to classes, that is all well and good. But your criminal history is pretty significant; not only in the number of convictions but in the seriousness of those convictions.

"This is your second robbery conviction and yeah, I know it's an attempted robbery but I don't care, that's robbery. So the fact that you're getting a dispositional departure and not having the special rule imposed is a major break for you. And if you can't follow [the probation] conditions, and I mean all [the probation] conditions, and you don't meet those deadlines, then there's a strong chance that if you come back on a [probation violation], that your probation's [going to] be revoked and your [going to] go serve your sentence. Because [your attorney] says that you're a good candidate for probation, I don't know if that's correct, and your actions are [going to] tell me whether or not you're a good candidate, but if you come back to court on a [probation violation], then that's telling me that you're not a good candidate. So at that point, I don't know that we're going to waste any more time on probation, you're probably going to go serve your sentence. I want to let you know that up front so there's no misunderstanding if you violate this probation."

On July 15, 2019—about seven months after his sentencing hearing—the trial court issued a warrant for McGregor's arrest based on McGregor's probation officer's contention that McGregor was using PCP again. McGregor's probation conditions prohibited him from consuming alcohol or using illegal drugs. His conditions also

3

required him to submit to random urinalysis testing for drugs. The warrant for McGregor's arrest alleged that McGregor was using PCP again because his most recent urinalysis test was positive for this drug.

At the start of McGregor's hearing on this probation violation, McGregor's attorney explained that McGregor would admit to using PCP. Yet, shortly after saying this, McGregor told the trial court that he had recently used Benadryl cream to treat an allergic reaction. He now suggested that the Benadryl cream caused his urinalysis test to show a false positive for PCP. The trial court told McGregor that it would be "quite a coincidence" if the Benadryl caused a false positive for PCP given McGregor's substance abuse history. In addition, it explained that because McGregor now alleged that the Benadryl cream caused his urinalysis test to show a false positive for PCP, it would continue McGregor's probation violation hearing so his urinalysis sample could be sent to a lab for confirmation testing.

Ultimately, the lab testing on McGregor's urinalysis sample confirmed that he had used PCP. Also, McGregor's most recent urinalysis —a test that occurred after his probation violation hearing was continued—was positive for PCP. Still, once McGregor learned about this urinalysis test result, McGregor told his probation officer that he had recently been prescribed some medication that could cause his urinalysis test to show a false positive for PCP.

At McGregor's continued probation violation hearing, because the additional testing proved that McGregor was lying about his PCP use, the State asked the trial court to impose a 60-day jail sanction and additional drug treatment on McGregor. At his initial probation violation hearing, the State had not asked that McGregor attend additional drug treatment. In his response, McGregor admitted to using PCP in violation of his probation. He also agreed with the State that a 60-day jail sanction was appropriate. All the same, he

asked the trial court not to revoke his probation since he had complied with some of his other probation conditions.

In the end, the trial court did not revoke McGregor's probation. Instead, it imposed a 60-day jail sanction, added new probation conditions, and extended McGregor's probation by 24 months. But in doing so, it gave McGregor another warning about the necessity of complying with his probation conditions as well as a warning about being forthcoming with the court. And in giving this warning, the trial court and McGregor had the following exchange:

"[THE COURT:] What is highly concerning to this Court, and which Mr. McGregor is solely responsible for, is he has essentially wasted everyone's time. Because I bent over backwards repeatedly at that last hearing to try and get this to a resolution at that time. Mr. McGregor is using PCP again and he refused to admit it at that hearing because he wanted us to go through this farce of having to get confirmation to confirm what was suspected. And his story about this Benadryl cream is clearly made up and was intended to deceive his probation office and this Court.

"And don't shake your head at me, Mr. McGregor.

"[McGREGOR]: Sorry, Your Honor.

"THE COURT: The time to do that was two weeks ago when we were here. We're not playing your games anymore.

"[McGREGOR]: No, Your Honor.

"THE COURT: "And the reason your attorney has to go through this today is because you couldn't do what needed to be done at this last hearing. And then for you to now tell your probation officer earlier this week that again apparently some medication from the hospital are causing you again to test positive for PCP, another remarkable coincidence. I don't know how stupid you think we are, but his is not our first rodeo, as they say.

"[McGREGOR]: I know. I—

"THE COURT: No, you're not giving me comments at this point, Mr. McGregor. Your attorney has spoken on your behalf.

5

"You're very fortunate you're not in prison today on this. I take the fact that your problem is apparently so severe that you lie to your probation officer. I don't know if you're lying to your family, but you're certainly lying to this Court and wasting everyone's time. So we're going to deal with this issue. There are consequences for this. And you will serve this jail sanction. And I am not authorizing work release. At your last hearing when you were custody I did authorize work release pending the [probation violation] disposition in this case because I was giving you the benefit of the doubt.

"You are no longer receiving the benefit of the doubt from me. You have shown that you are a liar, you're not truthful with your probation officer, or with this Court. And I take that seriously. Had you been truthful at the [first probation violation hearing], we would be having a different conversation. We would not be here because we would have resolved it at that time. You were unable and unwilling to do that. You think you can play games, and that is not how we work up here.

"And I am telling you all of this today so you are crystal clear that if you continue to behave in this manner—and I understand that relapse may be a part of recovery, but you will be going back to treatment. But if you continue to behave like this and play games with [your probation officer] or this Court again, then at your next [probation violation] hearing, you should not expect to be reinstated like you were today. I don't know how many breaks you expect to get, but you're just about out of them."

On July 14, 2020—about a year after the preceding probation violation hearing—McGregor's probation officer once again alleged that McGregor had violated the conditions of his probation. This resulted in the trial court issuing a warrant for McGregor's arrest that same day. This warrant stated that McGregor had violated his probation conditions by committing a new crime and consuming alcohol on July 11, 2020. As for the new crime, it specifically stated that McGregor had committed "Criminal Damage to Property/[domestic violence] as alleged by the Wichita Police Department incident report number 20C042018." This incident report does not appear in the record on appeal.

On July 27, 2020—the date the trial court was originally scheduled to hold the evidentiary hearing on McGregor's probation violations—the trial court had to continue

McGregor's hearing. Yet, before continuing McGregor's hearing, the trial court modified McGregor's bond from $25,000 to house arrest while wearing an alcohol monitoring bracelet.

On August 3, 2020, while on house arrest, McGregor's alcohol monitoring bracelet detected alcohol in McGregor's body. As a result, McGregor's probation officer alleged that McGregor had violated his probation by consuming alcohol on that date. Based on this allegation, the trial court issued another warrant for McGregor's arrest.

At the September 25, 2020 evidentiary hearing on McGregor's outstanding probation violations, the State presented the testimony of four people: (1) Israel Taylor, a police officer who investigated the alleged new crime involving McGregor on July 11, 2020; (2) Emily Hoover, another police officer who investigated the alleged new crime involving McGregor on July 11, 2020; (3) Licandra Feliciano, McGregor's wife; and (4) Patrick Hiebert, an employee of the company managing McGregor's alcohol monitoring bracelet.

Officers Taylor and Hoover testified about being dispatched to a house that reportedly had an ongoing domestic dispute on July 11, 2020, around 10 p.m. They explained that when they arrived at the house, they saw a man, who they identified as McGregor, holding a child, who appeared frightened. They explained that although they told McGregor to let go of the child, he refused. So, they had to physically separate McGregor from the child. And they both testified that once they arrested and Mirandized the uncooperative McGregor, McGregor told them about punching an unidentified man earlier that evening because he thought that man was having an affair with Feliciano.

Although there was conflicting evidence about whether Officers Taylor and Hoover were dispatched to McGregor's house or Feliciano's mother's house, Officer Hoover testified that she remembered seeing a broken glass inside the house. She also

7

testified that while inside the house, some children pointed to the broken glass. But Officer Hoover remembered no other details regarding the broken glass.

As for McGregor's alcohol consumption, both Officers Taylor and Hoover testified that McGregor showed signs of intoxication. Officer Taylor noted that during his interview with McGregor, McGregor "freely told [him] that he had been drinking" that evening. Meanwhile, Officer Hoover explained that during her interview with Feliciano, Feliciano told her that McGregor was belligerent because he was "very intoxicated."

Feliciano, whose primary language was not English, provided conflicting testimony about (1) whether the police were dispatched to McGregor's or her mother's house and (2) whether McGregor owned the broken glass that Officer Hoover had testified about. All the same, Feliciano explicitly testified that McGregor accidently broke the disputed glass during a family celebration for her daughter's birthday. She testified that McGregor never consumed alcohol during the birthday party, adding that he cannot consume alcohol because he has Crohn's disease. She also testified that McGregor never intentionally disobeyed the police's order to release the child he was holding, who she identified as McGregor's 10-year-old nephew. Instead, she asserted that McGregor was merely hugging his nephew, who was afraid of the police, to calm his nephew down.

Hiebert testified that on the evening of August 3, 2020, McGregor's alcohol monitoring bracelet detected alcohol in McGregor's body. He further testified that after McGregor learned that his alcohol monitoring bracelet had detected alcohol, McGregor e-mailed him a list of prescription medications he was taking that he believed may have caused his bracelet to falsely detect alcohol. When asked about the possibility of McGregor's prescription medications causing his bracelet to falsely detect alcohol, Hiebert explained that this was highly unlikely. He testified that outside of an enormous amount of cough syrup, he did not know of any medicine that could falsely cause McGregor's bracelet to detect alcohol in his system.

8

At the end of its evidence, that State argued that by breaking the glass, McGregor had committed criminal damage to property and domestic violence while on probation. It also pointed to evidence indicating that alcohol was "flowing freely" at the July 11, 2020 birthday celebration as proof that McGregor had consumed alcohol while on probation. McGregor countered that the State failed to establish the alleged probation violations by a preponderance of the evidence. He contended that he had not committed criminal damage to property since the broken glass at issue was his property. Then, he asserted that the trial court could not revoke his probation based on his alleged alcohol consumption for two reasons: (1) because the police did not make him submit to any alcohol testing on July 11, 2020, and (2) because his probation officer did not make him submit to confirmation alcohol testing after his bracelet detected alcohol in his body on August 3, 2020.

Nevertheless, the trial court rejected McGregor's arguments. It found that a preponderance of the evidence established that McGregor committed the new crime of criminal damage to property on July 11, 2020, consumed alcohol on July 11, 2020, and consumed alcohol on August 3, 2020. It explained that Feliciano's testimony was not credible, especially given Officer Hoover's testimony that Feliciano had previously told her that McGregor was very intoxicated. It found that by breaking the glass, McGregor had committed the crime of criminal damage to property while "some sort of a [domestic violence] incident [was] occurring." Likewise, it found that Hiebert's testimony about McGregor's alcohol monitoring bracelet detecting alcohol in McGregor's body on August 3, 2020, established that he had consumed alcohol on that date by a preponderance of the evidence.

Once the trial court found that McGregor had violated his probation, it summarized the history of McGregor's case thus far. This included McGregor's history of denying PCP and alcohol use after testing indicated otherwise. Then, the parties made their disposition arguments. At that point, the State asked the trial court to revoke

9

McGregor's probation, citing his substance abuse problems as evidence that he was not amenable to probation. But McGregor's attorney countered that the trial court should allow McGregor to remain on probation despite his substance abuse problems:

"[I]f you look back to the very base of the crime that [McGregor's] been convicted of, as well as the reason for the agreed dispositional departure, . . . Mr. McGregor has a crippling addiction to PCP, and that addiction is the root cause of the criminal activity involved in this case.

"A SACK evaluation was also part of that departure recommendation. That was completed on September of 2018, recommended level 3 inpatient treatment.

"Since that time, based on [McGregor's probation officer's] report, he has completed drug and alcohol treatment in January of 2019, completed—and he also completed drug and alcohol treatment in March of 2020.

"There are—the Court already touched on the defendant's criminal history. There are numerous entries for possession or other substance abuse-related convictions. They date back all the way to his very first criminal conviction when he was a juvenile, which was a possession of a controlled substance conviction.

"I think that he's just as amenable today as he was on the day that he was originally sentenced. We were fully aware—we were fully aware he was going to have this struggle with these substance abuse issues throughout the course of his probation.

"I don't know if the Court is going to find it appropriate, based on the fact that [he] drank alcohol two times, that—that we know of, [he] drank alcohol two times that he needs to go serve 29 months in prison.

"It's my firm belief that when people go to prison, the substance abuse problems come out worse. That's not any fault of the system. It's just kind of the reality of the situation we're in.

"I believe that Mr. McGregor has put forth the effort to show that he's amenable to probation, despite his substance abuse issues. . . .

. . . .

"I think that he is still amenable to probation, and I think that he's shown that he's trying, but he has a lifelong issue with substances, and I think based on these Benadryl for PCP and codeine for alcohol, and the hair products, I think that he still has accepted

that himself, but I think if we really get down to the root of that issue that maybe we can get him through this full term probation successfully."

Once McGregor's attorney made the preceding arguments, the trial court gave McGregor the opportunity to personally address it. McGregor used this opportunity to tell the trial court that "PCP was an addiction for [him]" while the "alcohol just came up." Then he asked the trial court to "show [him] some type of leniency."

The trial court, though, revoked McGregor's probation and ordered him to serve his original underlying sentence of 29 months' imprisonment followed by 12 months' postrelease supervision. In doing so, it supported its decision by telling McGregor the following:

"THE COURT:  Mr. McGregor, I'm not going to spend a lot of time discussing things with you, because, to be honest, I tried to do that at your sentencing to no avail, based upon the history of this case.

"You've got horrible criminal history. And the fact that this conviction for attempted robbery, where you've got a good bargain, getting this knocked down to a lesser charge, which was one of the reasons for the recommendation for a dispositional departure, but your criminal history is pretty bad.

"And this is not your first convictions, and it's not your first violent, serious conviction. You have a history of those.

"And this is not your first problem with the law resulting from drugs. You've had, as I noted at that time, a 19-year criminal history.

"And while we have tried some things on this case, I want to point out to you that the dispositional departure you received was discretionary. I gave you that opportunity. So to now say you'd like leniency when you've been given leniency misses the point.

"And what is frustrating with your case is you appear to be a game player, which is you've always got an excuse of why something is going on, whether it's shampoo causing an alcohol reading or Benadryl cream or whatever it is, you've always got some story. *And you'd be better off if you would have walked in here today and said, I drank, I screwed up.* But you can't even do that Mr. McGregor.

"And then to essentially have your wife enable you by her testimony doesn't help your situation. And so I know you've been to prison before on your Oklahoma case, because we talked about that at your sentencing, among all the other things.

"*So now we have a hearing where apparently you're denying any alcohol use, but now that it's been found that you're in violation, you go, okay, well, I got an alcohol problem. Yeah, I screwed up. Well, you'd have been better off just admitting that from day one on this.* Where we would have ended up, I don't know.

"But you throw out all this B.S., and then when it doesn't work, then you say, give me leniency.

"So you're not taking responsibility for any of your problems. And so then to ask me to reinstate you or to give you a break when this is how you have behaved, you're asking for your bad behavior to be rewarded, and that's not how this works.

"And, yes, you have accomplished some things on probation, but that's on a probation that you were given as an opportunity as a dispositional departure, and you squandered that dispositional departure. It was all in your hands. And you've made choices, and you could have been revoked. You could have been revoked to [Department of Corrections] at your first [probation violation] hearing, and I didn't do that. I gave you leniency again, because this was a dispositional departure. So you could have gone to prison then.

"And so now you're back again, once again, giving me a song and dance of what you would like to see happen.

"So, yes, I am frustrated by your case and your behavior. So I don't believe you're amenable to probation any further. You've been given more than enough opportunities.

"So at this point I am going to end this probation . . . . I'm also going to find that this was a dispositional departure, so there is no requirement for further intermediate sanctions under the Kansas statute . . . ." (Emphases added.)

McGregor timely appeals the revocation of his probation.

ANALYSIS

*Did the trial court wrongly revoke McGregor's probation?*

To establish that an offender has violated his or her probation, the State must prove that the offender violated a probation condition by a preponderance of the evidence. This means that the evidence demonstrates that the violation is more probably true than not true. *State v. Lloyd*, 52 Kan. App. 2d 780, 782, 375 P.3d 1013 (2016). An appellate court reviews the trial court's factual findings on whether the State proved a probation violation by a preponderance of the evidence for substantial competent evidence. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). In contrast, an appellate court reviews the trial court's decision to revoke an offender's probation for an abuse of discretion. A trial court abuses its discretion when its decision is based on an error of law, an error of fact, or an otherwise unreasonable basis. *Lloyd*, 52 Kan. App. 2d at 782. Yet, to the extent an offender's argument involves a due process rights violation, an appellate court considers the offender's due process rights argument while exercising unlimited review. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016).

On appeal, McGregor argues that the trial court made two errors that implicated his due process rights, entitling him to reversal of the revocation of his probation and a new disposition hearing. First, McGregor argues that the trial court wrongly found that he had violated his probation by committing the new crime of "Criminal Damage to Property/[domestic violence]" because the State failed to prove this crime by a preponderance of the evidence. In making this argument, McGregor points to the State's evidence indicating that he owned the disputed glass that he accidentally broke. Second, although McGregor never contends that the State failed to prove that he consumed alcohol while on probation by a preponderance of the evidence, he argues that the trial court "erroneously revoked [his] probation because he did not admit to the [probation violations concerning] alcohol . . . ." In particular, McGregor challenges the following

comments by the trial court to him when revoking his probation: (1) "[Y]ou'd been better off if you would have walked in here today and said, 'I drank, I screwed up'"; and (2) "[W]e have a hearing where apparently you're denying any alcohol use, but now that it's been found that you're in violation, you go, okay, well I got an alcohol problem. Yeah, I screwed up. Well, you'd been better off just admitting that from day one on this." According to McGregor, by making these comments, the trial court incorrectly based its revocation of his probation on its irritation with him making the State prove his alcohol-related probation violations by a preponderance of the evidence.

The State responds that neither of McGregor's arguments are persuasive. Although it briefly argues that McGregor has not preserved his due process claims for appeal, it chiefly contends that this court should affirm the trial court's revocation of McGregor's probation because it proved that he violated his probation conditions by a preponderance of the evidence. About McGregor's commission of the "Criminal Damage to Property/[domestic violence]," the State stresses that the trial court found that Feliciano's testimony was self-serving. It apparently argues that because the trial court found her testimony self-serving, her testimony about her statement is irrelevant that McGregor owned the disputed glass that he accidentally broke. As for McGregor's alcohol consumption while on probation, the State contends that the record on appeal undermines McGregor's argument that the trial court revoked his probation as punishment for requesting an evidentiary hearing on his alcohol-related probation violations.

When McGregor committed his underlying attempted robbery conviction, K.S.A. 2017 Supp. 22-3716(c)(9)(B) allowed the trial court to immediately revoke McGregor's probation upon proof of a probation violation since he received his probation because of a dispositional departure. Thus, to prove that the trial court wrongly revoked his probation based on his commission of "Criminal Damage to Property/[domestic violence]" and his consumption of alcohol while on probation, McGregor must establish that the trial court erred by making both probation violation findings. Stated another way, because the trial

14

court had discretion to revoke McGregor's probation on proof of any probation violation, we may affirm the trial court so long as: (1) The preponderance of the evidence is supported by substantial evidence that McGregor committed one probation violation and (2) the trial court did not otherwise abuse its discretion when revoking McGregor's probation.

Here, it is irrelevant whether the trial court erred by revoking McGregor's probation based on his alleged commission of "Criminal Damage to Property/[domestic violence]" while on probation because the trial court properly revoked McGregor's probation based on his consumption of alcohol on probation. See K.S.A. 2017 Supp. 22-3716(a) (no requirement for more than one violation); see also *State v. Grossman*, 45 Kan. App. 2d 420, 428, 248 P.3d 776 (2011) (holding that only one valid probation violation is needed to uphold the trial court's revocation of an offender's probation). McGregor never contends that the State failed to prove that he consumed alcohol while on probation by a preponderance of the evidence. Instead, his entire argument is that the trial court revoked his probation as punishment for "exercis[ing] his right to have the State prove [the alcohol-related probation violation] allegations against him" by a preponderance of the evidence. McGregor's argument here is a red herring. That is, his argument inappropriately directs attention away from the primary issue at hand: whether the State has proved by a preponderance of the evidence that he consumed alcohol while on probation. Thus, the key problem with McGregor's argument is that he ignores the question at hand.

Also, in making this argument it is readily apparent that McGregor has taken the trial court's comments out of context. As shown in the facts section of this memorandum, the trial court gave McGregor warnings about the necessity of complying with his probation conditions given his lengthy criminal history and substance abuse history. It warned McGregor at his sentencing hearing. Then, it warned McGregor at the continued hearing for his first probation violation—a hearing that only happened because McGregor

15

lied about Benadryl cream causing his urinalysis test to show a false positive for PCP. Additionally, when giving this warning to McGregor at his continued probation violation hearing, the trial court told McGregor that he had proven himself untrustworthy by lying about the Benadryl cream causing the false positive for PCP. Indeed, it explicitly told McGregor that if he "continue[d] to behave like [that] and play games with [his probation officer] or with this Court," it would likely revoke his probation should he violate his probation conditions again. Thus, although McGregor should not have needed any notice, the trial court gave McGregor notice that if he violated his probation again, lying to the trial court would only hurt his chances of remaining on probation.

Nevertheless, at his September 25, 2020 evidentiary hearing, McGregor continued to give thinly veiled excuses to the trial court about his continued alcohol consumption.

Again, at the evidentiary hearing, Officer Taylor testified that McGregor explicitly told him he was intoxicated the evening of July 11, 2020. Also, Officer Hoover testified that Feliciano told her that McGregor was very intoxicated that evening. So, the evidence supporting McGregor's alcohol consumption on July 11, 2020, was overwhelming. Still, Feliciano testified that McGregor did not consume alcohol on July 11, 2020. She even suggested that McGregor never consumed alcohol because he has Crohn's disease. Plainly, because all the other evidence indicated that McGregor had consumed alcohol on July 11, 2020, Feliciano's belated assertion that McGregor had not consumed alcohol on that date borders on the frivolous. Because Feliciano is McGregor's wife, the trial court's determination that her testimony was not credible was understandable, since she was not a disinterested witness.

As for McGregor's alcohol consumption on August 3, 2020, Hiebert explained that upon learning that his alcohol monitoring bracelet detected alcohol in his body, McGregor e-mailed him a list of his prescription medications. He explained that in this e-mail, McGregor alleged that his prescription medications caused his bracelet to

16

erroneously detect alcohol in body. In short, given McGregor's history of lying about using intoxicants while on probation, McGregor's assertion that his prescription medications caused his alcohol monitoring bracelet to erroneously detect alcohol in his body on August 3, 2020, also borders on the frivolous.

Then, during his closing arguments, McGregor argued that the State's evidence of his alcohol use was legally insufficient. He contended that the State necessarily failed to prove his alcohol consumption by a preponderance of the evidence because no confirmation alcohol testing occurred on July 11, 2020, or on August 3, 2020.

Consequently, at his September 25, 2020 evidentiary hearing, the State's evidence was very strong. It clearly established that McGregor had consumed alcohol on July 11, 2020, and August 3, 2020, by a preponderance of the evidence. Despite this, McGregor continued to deny alcohol use on those dates all the way through his closing arguments. In turn, although McGregor eventually admitted to using alcohol while on probation, McGregor did not do so until after the trial court found that the State had proven his alcohol-related probation violations by a preponderance of the evidence. *And it was only then—after the trial court had found his alcohol-related probation violations—that McGregor asked the trial court to be lenient with him because "PCP was an addiction for him" while the "alcohol just came up."*

McGregor here makes an appeal *ad misericordiam*, an appeal to pity, with his leniency argument. Nevertheless, because the question under consideration in this appeal is a factual issue—whether McGregor violated a condition of his probation by consuming alcohol while on probation—an appeal to pity is irrelevant because it simply deflects away from the facts. For this reason, pity is a bad argument for McGregor because the objective facts here showed that he violated his probation by consuming alcohol on July 11, 2020, and August 3, 2020, by a preponderance of the evidence.

In addition, when the trial court made the comments about McGregor having been better off had he admitted to his alcohol-related probation violations at the start of his probation violation hearing, the trial court was merely referring to its earlier warnings to McGregor. This included its warning that lying would only hurt his chances of remaining on probation. The trial court was explaining that McGregor could not expect to get any more leniency from it by apologizing or by pointing to his substance abuse problems since it had previously been lenient with him for those exact reasons. Then the trial court found that McGregor's leniency request based on his apology and substance abuse problems was disingenuous since just moments before, he had denied consuming alcohol in violation of his probation.

Simply put, in context, the trial court's comments about McGregor "be[ing] better off" had he admitted to consuming alcohol in violation of his probation rather than having an evidentiary hearing were proper. The comments clarified why McGregor's behavior, including his inability to truly take responsibility for his substance abuse problems, supported the revocation of his probation. In effect, McGregor's history of alleging that he had not consumed any alcohol or illegal drugs followed by an apology and request for leniency once evidence established that he was lying about his alcohol and illegal drug use proved the following: that McGregor would lie about his alcohol and illegal drug use, interposed for the purpose of delay, to remain on probation. As emphasized by the trial court when revoking McGregor's probation, McGregor would not be continuingly rewarded for such behavior. Accordingly, in context, the trial court's comments to McGregor about having "be[en] better off" had he acknowledged consuming alcohol at the outset of his probation violation hearing were entirely appropriate. Indeed, McGregor's willingness to acknowledge his alcohol consumption at the outset of his probation violation hearing would have added some relevance to his leniency argument.

Affirmed.

18