NOT DESIGNATED FOR PUBLICATION

No. 123,584

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

MARCUS ALAN AMADOR,
*Appellant*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; WILLIAM S. WOOLLEY, judge. Opinion filed March 4, 2022. Affirmed.

*Jennifer C. Bates*, of Kansas Appellate Defender Office, for appellant.

*Julie A. Koon*, assistant district attorney, *Marc Bennett*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before BRUNS, P.J., MALONE, J., and RICHARD B. WALKER, S.J.

PER CURIAM: Marcus Alan Amador pled guilty to one count of aggravated sexual battery and was placed on probation. After Amador committed a new crime, the district court revoked his probation and imposed the underlying prison sentence. Amador appeals, arguing that his due process rights were violated when the district court revoked his probation without providing him written notice of the alleged probation violations. Because we find any error committed by the district court was harmless, we affirm the district court's revocation of Amador's probation.

1

FACTS

In November 2016, Amador was charged in Sedgwick County District Court with one count of aggravated sexual battery, one count of lewd and lascivious behavior, and one count of criminal trespass.

In January 2018, Amador pled guilty to one count of aggravated sexual battery, pursuant to a plea agreement under which the other two charges were dismissed. The district court sentenced Amador to 36 months of probation and lifetime postrelease supervision, with an underlying prison sentence of 31 months.

In July 2018, the State filed a warrant alleging that Amador had violated his probation by failing to report as directed and by being discharged from his sex offender treatment program and cognitive skills class for failure to attend. Amador waived his right to an evidentiary hearing and admitted to the allegations listed in the warrant. The district court sanctioned him with three days in the county jail.

In May 2019, the State once again filed a warrant alleging Amador had violated the terms of his probation. The alleged violations included testing positive for cocaine, admitting to using cocaine, failing to report, and being a passenger in a car where the driver was arrested for active warrants and possession of cocaine, marijuana, and a firearm. It appears from the record that no immediate action was taken in response to this warrant

At some point, Amador apparently was also charged with the crime of violating his offender registration requirements. The record before us does not include any warrant related to this charge and does not show when exactly the offense occurred.

The State refiled the May 2019 probation violation warrant in January 2020. At Amador's probation violation hearing, the district court addressed the allegations in the warrant and the offender registration charge as two separate alleged probation violations. The district judge asked his counsel if a warrant had been filed for his offender registration violation, and Amador's counsel said that it had been. However, when the judge indicated that he could not find it, Amador's counsel told the judge that she did not have a copy and did not actually know whether it had been filed yet.

After Amador waived his right to an evidentiary hearing and admitted to the violations alleged in the May 2019 warrant, he asked the district court to set disposition of the admitted violations to track with his offender registration case. He then waived his right to a preliminary hearing in the offender registration case and asked the district court to set arraignment in that case to occur at the same time as disposition of his probation violation. The district court granted these requests and set disposition of the admitted violations to occur on the same date as Amador's arraignment on the offender registration charge.

At his arraignment, Amador acknowledged receipt of the complaint and information and pled guilty to one count of offender registration violation under a plea agreement with the State. The State indicated that, in exchange for Amador's plea, it agreed to recommend that the district court (1) follow the presumption of prison and impose the low number in the appropriate sentencing grid box; (2) revoke Amador's probation; and (3) run Amador's sentence for the offender registration violation consecutive to his underlying sentence in the aggravated sexual battery case. Amador confirmed on the record that this matched his understanding of the plea agreement. Before accepting Amador's guilty plea, the district court had Amador confirm that he understood that by pleading guilty, he was providing the district court with a basis to revoke his probation.

3

At Amador's sentencing hearing on the offender registration violation, his counsel agreed that the district court could dispose of his probation violation at the same time as sentencing, since by pleading guilty in the new case he was admitting to violating the terms and conditions of his probation and waiving his right to an evidentiary hearing. The district court explained that it would first pronounce the sentence for Amador's registration violation conviction, next decide whether it would grant a departure sentence, and then dispose of the probation violations. The district court denied Amador's motion for a dispositional or durational departure and sentenced him to 17 months in prison for the offender registration conviction. The district court then revoked Amador's probation and imposed the underlying prison sentence, finding that he had committed a new crime and demonstrated that he was not amenable to probation.

Amador timely appeals from the district court's decision revoking his probation.

ANALYSIS

As his single issue on appeal, Amador argues that the district court denied him his due process rights when it relied on his offender registration conviction to revoke his probation. Specifically, he contends that the district court failed to provide him written notice of the allegation that he had violated his probation by committing a new crime. By denying him this fundamental due process right, Amador argues, the district court was divested of jurisdiction to revoke his probation.

Amador concedes that he did not raise this issue to the district court. He argues, however, that we can still consider his claim as it implicates his fundamental rights and the district court's jurisdiction to revoke his probation.

The existence of subject matter jurisdiction cannot be waived, and its nonexistence may be challenged at any time. *State v. Dunn*, 304 Kan. 773, 784, 375 P.3d 332 (2016).

4

Furthermore, a district court may be deprived of jurisdiction over revocation proceedings if a probationer is denied due process. *State v. Hall*, 287 Kan. 139, 144, 195 P.3d 220 (2008). Similarly, a party may raise an issue for the first time on appeal if its consideration is necessary to serve the ends of justice or to prevent the denial of fundamental rights. *State v. Hirsh*, 310 Kan. 321, 338, 446 P.3d 472 (2019). And a claim that a district court has violated a probationer's due process rights by failing to give adequate notice of alleged violations implicates the probationer's fundamental rights. See *State v. Foster*, 290 Kan. 696, 702, 233 P.3d 265 (2010) (holding that due process concerns warrant review for the first time on appeal); see also *State v. Kendrick*, No. 120,052, 2020 WL 858073, at *2 (Kan. App. 2020) (unpublished opinion) (considering probationer's claim for the first time on appeal that he did not receive written notice of alleged probation violations).

Accordingly, we agree with Amador that we may consider his claim despite his failure to raise it before the district court. Where the question is whether a district court complied with the requirements of due process in revoking an individual's probation, we employ an unlimited standard of review. *State v. Hurley*, 303 Kan. 575, 580, 363 P.3d 1095 (2016).

In revoking Amador's probation, the district court had to conform with the requirements of due process. The United States Supreme Court has established the minimum due process rights guaranteed at revocation proceedings to parolees in *Morrissey v. Brewer*, 408 U.S. 471, 488-89, 92 S. Ct. 2593, 33 L. Ed. 2d 484 (1972), and extended those rights to probationers in *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S. Ct. 1756, 36 L. Ed. 2d 656 (1973). These minimum due process rights include written notice of the claimed violations of probation, disclosure to the probationer of the evidence against him or her, the opportunity to be heard in person and to present evidence and witnesses, the right to confront and cross-examine adverse witnesses, a neutral and detached hearing body, a written statement by the fact-finder as to the evidence relied on

5

and reasons for revoking probation, and a right to the assistance of counsel. *Hurley*, 303 Kan. at 582.

K.S.A. 2016 Supp. 22-3716, the probation revocation statute in effect during the relevant time period in this case, codifies into state law the minimum due process rights set forth in *Gagnon*. See *State v. Rasler*, 216 Kan. 292, 296, 532 P.2d 1077 (1975). That statute requires the community correctional or court services officer to "submit in writing a report showing in what manner the defendant has violated the conditions of release"; requires the district court to conduct a probation revocation hearing "in open court"; requires the State to carry its burden of establishing the violation; requires that the defendant have the right to counsel; and requires that "[t]he defendant shall have the right to present the testimony of witnesses and other evidence on the defendant's behalf." K.S.A. 2016 Supp. 22-3716(b).

Amador claims that, by failing to provide him with written notice of the allegation that he had violated his probation by committing a new crime, the district court was divested of jurisdiction to revoke his probation. Amador notes that a district court can be divested of subject matter jurisdiction over a probationer where the State violates the probationer's due process rights by unreasonably delaying the execution of a probation violation warrant. Amador argues that the due process requirement of notice is just as firmly rooted as the requirement for timely execution of an arrest warrant and that the denial of notice should similarly divest the court of subject matter jurisdiction to revoke an individual's probation.

Amador cites primarily to *Hall*, 287 Kan. at 144, for the proposition that a district court may be divested of subject matter jurisdiction if it denies a probationer due process. However, *Hall* and the other cases cited by Amador involve the temporal limits placed on a district court's jurisdiction over a probationer. Jurisdiction to revoke probation is governed by K.S.A. 2016 Supp. 22-3716(a), which has been interpreted to permit a

6

district court to revoke an individual's probation after it has ended if a probation violation warrant is filed prior to expiration of the probationary term. 287 Kan. at 143. However, due process prohibits a district court's jurisdiction in such cases from extending indefinitely. If the State violates a probationer's due process rights by unreasonably delaying the execution of a probation violation warrant, the State is deemed to have waived the violation and jurisdiction terminates. 287 Kan. at 144.

Amador does not contend that the term of his probation had ended by the time the district court revoked his probation. Under K.S.A. 2016 Supp. 22-3716(a), the district court had jurisdiction to revoke his probation so long as a violation of his probation was proven. Here, the question is not whether due process cut off the district court's jurisdiction, but rather whether the district court's exercise of its jurisdiction complied with the requirements of due process. As such, Amador's reliance on *Hall* is misplaced.

K.S.A. 2016 Supp. 22-3716 sets forth the minimum due process rights due to a probationer, and a district court's failure to comply with the written notice requirements of that statute constitutes a due process violation. As a result, a district court may not revoke an individual's probation based on a violation not alleged in the probation violation warrant. See *Hurley*, 303 Kan. at 583; *Kendrick*, 2020 WL 858073, at *4.

The State seeks to analogize this case to *State v. McGill*, 51 Kan. App. 2d 92, 340 P.3d 515 (2015). In that case, another panel of our court rejected a probationer's argument that his due process right to written notice was violated, even though the violation warrant did not specifically allege that he had violated his probation by committing new crimes. As Amador correctly notes, however, *McGill* is distinguishable from the facts of this case. In *McGill*, the probation violation warrant contained a factual description of the conduct that provided a basis for the district court's finding that McGill had committed a new crime. Because the facts underlying the alleged violation—commission of a new crime—were included in the warrant, the warrant contained written notice of the alleged

7

violation. *McGill*, 51 Kan. App. 2d at 97. In this case, by contrast, the warrant filed by the State alleged no facts related to Amador's offender registration charge.

The State acknowledges the differences between *McGill* and Amador's case and further argues that Amador's due process rights were not violated because he had actual notice that his offender registration conviction could be used to revoke his probation. In support, the State points to the terms of Amador's plea agreement in his offender registration case and the fact that the district court advised Amador that it could revoke his probation if he pleaded guilty to the offender registration charge. Furthermore, the State notes that Amador was aware that compliance with the law was a condition of his probation. In the State's view, this is enough to satisfy due process.

The federal courts are instructive in assessing this claim. In *United States v. Davila*, 573 F.2d 986 (7th Cir. 1978), the probationer was not provided with any written notice of the alleged violation upon which his probation was eventually revoked. The Government argued that Davila nonetheless received adequate notice because he was orally advised at a preliminary hearing of the alleged probation violation. Under the Government's formulation, so long as a probationer had actual notice of the alleged violations and opportunity to challenge the allegation, there was no due process violation. The Seventh Circuit Court of Appeals rejected this argument, explaining that the Government's position could not be squared with the explicit language of *Morrissey* and *Gagnon*. *Davila*, 573 F.2d at 987-88. Due process requires written notice—actual notice is not a substitute.

Here, the May 2019 warrant included written notice of four alleged violations:  (1) being a passenger in a car where the driver was arrested for active warrants and possession of cocaine, marijuana, and a firearm; (2) testing positive for cocaine; (3) admitting to using cocaine; and (4) failing to report. When the State refiled this warrant in January 2020, it did not include an additional allegation that Amador had committed a

8

new crime. There is no evidence in the record that a warrant containing the allegation that Amador violated his probation by committing a new crime was ever filed by the State. Accordingly, Amador's due process right to written notice was violated when the district court revoked his probation on the basis that he had committed a new crime.

However, this is not the end of the analysis. Once it has been established that a probationer's due process rights were violated, the burden is on the State to show that the error was harmless. To show an error is harmless, the State must prove beyond a reasonable doubt that the error complained of did not affect the outcome of the trial in light of the entire record, i.e., prove there is no reasonable possibility that the error affected the verdict. *Hurley*, 303 Kan. at 583-84.

Here, the State claims any error was harmless as Amador had actual notice of the allegation that he violated the terms of his probation by committing a new crime. The State notes that one of the terms of Amador's plea agreement in his offender registration case was that the State would recommend that the district court revoke his probation, with his new conviction as the basis for revocation. The State also points to the fact that, before accepting Amador's guilty plea in the offender registration case, the district court advised him that it could revoke his probation as a result.

In addition, it is clear from the transcripts of Amador's probation violation hearing that his counsel was aware at time that the State was alleging Amador had committed a second violation based on his new offender registration charge. Amador also specifically requested that the district court set the disposition of the admitted violations to track with his offender registration case.

Based on these facts, the State has met its burden to show that the error here was harmless. Although the State did not strictly comply with the required statutory procedures, Amador was on notice from the outset of the proceedings that the State was

9

relying on his offender registration violation as a basis to revoke his probation. Amador requested that his two cases be set to track one another, entered a plea agreement under which the State would recommend his probation be revoked, and was advised by the district court of the possibility of this outcome before pleading guilty. There is no indication that Amador would have not pleaded guilty or would have contested the allegation had the State given him written notice of the second alleged probation violation. As such, the error in this case was harmless.

Amador argues that the error here was not harmless, as the district court would not have been permitted to revoke his probation without finding that he had committed a new crime. This misapprehends the nature of the harmless error standard, though. The test is not whether there would have been a different outcome had Amador never committed a new crime; the test is whether the outcome would have been different had he received written notice of the alleged violation.

In conclusion, we find the district court committed error and violated Amador's due process rights when it revoked his probation based on a probation violation for which Amador did not receive written notice. However, under the particular circumstances of this case, we find the error to be harmless. We therefore affirm the district court's ruling.

Affirmed.

10