NOT DESIGNATED FOR PUBLICATION

No. 127,480

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOEL MEDLOCK II,
*Appellant*.


MEMORANDUM OPINION

Appeal from Shawnee District Court; CHERYL A. RIOS, judge. Submitted without oral argument. Opinion filed August 29, 2025. Affirmed.

*James M. Latta,* of Kansas Appellate Defender Office, for appellant.

*Jodi Litfin,* deputy district attorney, *Michael R. Serra*, deputy district attorney, *Alexandra Holdsworth*, legal intern, and *Kris W. Kobach*, attorney general, for appellee.


Before ISHERWOOD, P.J., WARNER and HURST, JJ.


PER CURIAM:  After being convicted of a crime and sentenced to probation, Joel Medlock left court and almost immediately went to a local business and engaged in erratic behavior that resulted in contact with law enforcement. The district court found that Medlock's behavior constituted an assault and that he thus committed a new crime which justified revocation of his recently granted probation. Medlock appeals the district court's revocation of his probation.

1

On appeal, Medlock claims there was insufficient evidence to support the district court's finding that he committed an assault. In revoking Medlock's probation, the district court was merely required to find that Medlock committed an assault by a preponderance of the evidence—rather than beyond a reasonable doubt like in a criminal conviction for assault. Under the circumstances, substantial competent evidence supported the district court's finding that Medlock violated his probation by committing the new crime of assault. The district court's decision to revoke Medlock's probation is affirmed.

FACTUAL AND PROCEDURAL BACKGROUND

On August 1, 2023, Joel Medlock II pled no contest to felony attempted aggravated assault in Case No. 23-CR-1169 in exchange for the State's agreement to (1) dismiss a charge for interference with law enforcement and (2) not request a deadly weapon finding on the aggravated assault charge. On November 29, 2023, the court sentenced Medlock to a 12-month suspended prison sentence and a probation term of 24 months, which matched the parties' agreement.

Just a few months after Medlock's sentencing, on January 31, 2024, the State filed a motion to revoke Medlock's probation, alleging Medlock violated his probation by failing to remain law abiding based on arrest report 2023-100317 for criminal trespass, battery, and assault. The supporting affidavit stated that on November 29, 2023, just after Medlock met with his probation officer to start his probation, "[Medlock] was arrested for new battery and assault charges." On January 31, 2024, the district court filed an order to show cause why Medlock's probation should not be revoked.

The district court held the show cause hearing on February 28, 2024, where Medlock stated that though he had police contact, he was acting in self-defense and therefore had not failed to remain law abiding as alleged. The alleged victim, J.D., testified that after work on November 29, 2023, he stopped by the salon where his wife

2

worked, and as he turned at the nearest intersection, Medlock approached his vehicle. J.D. rolled his window down to hear Medlock say: "I'm the Illuminati. . . . Go kill somebody." J.D. testified, "I took it as kind of a joke. But then in the context of him being in the salon it became very serious."

J.D. testified that at the time he thought Medlock's behavior was "odd" and "peculiar and concerning," so J.D. drove around the block to confirm that Medlock was no longer in front of the salon before he drove home. Sometime later that day, J.D.'s wife called and said two men, one matching the description of the man J.D. had encountered earlier, entered the salon where "[o]ne of them had a drain pipe or something." J.D.'s wife "didn't say they were particularly threatening in there," but they were disruptive. J.D. testified that his wife locked the salon and clients waited inside while Medlock yelled and screamed outside.

J.D. testified that after receiving the call from his wife, he returned to the salon and approached Medlock who was outside and tried to distract him while clients left the salon and got to their cars. J.D. described the event as follows:

> "And I—you know, we kind of got closer to each other and I was just trying to make sure that she could get to her car and distract him. And so then I kind of started backing him away.
>
> "And then at one point on the sidewalk we kind of started, kind of, getting handsy and I—I think I slipped on the ice and I fell backwards. And then I don't remember, but what my daughter and my wife said was that he jumped on me and then they jumped on him and we kind of got him subdued.
>
> "And then when I got out from underneath the pile, I got on top of him and said, 'You need to calm down, we're going to let you up.' So we let him up and then that's when it was, you know, we all parted ways at that point."

3

When asked whether he was afraid during the altercation, J.D. testified that he was afraid for his wife and daughter and that the event was scary:

> "[Counsel:] Were you afraid while that was happening?
> "[J.D.:] Yeah.
> "[Counsel:] Why?
> "[J.D.:] Well I didn't want to get hurt. I was afraid for the safety of my wife and my daughter. If it would have been any other circumstances, I probably would have just left the area. But I—you know, responsibility of my wife and my daughter. But yeah, it was scary. Yeah."

At the hearing, the State and Medlock's defense counsel each questioned J.D. about the police report from the incident, and the court later asked for the report as well. The arrest report narrative provides:

> "[J.D.] stated Joel [Medlock] entered the salon and was acting erratic, Joel had accused Joel [*sic*] and Joel's [*sic*] daughter . . . of being apart [*sic*] of the illuminati. [J.D.] stated he tells Joel to leave the property Joel walks towards [J.D.] and aggresses him. [J.D.] swings his arm to punch Joel however, [J.D.] falls to the ground. That is when Joel jumps on top of [J.D.] and a battery occurs. Officers were told the people who were inside of the store pull [*sic*] Joel off of [J.D.]. Joel leaves the business and is located by Officers at the park to the South of the case address."

After reviewing the report and hearing testimony and arguments from counsel, the district court concluded that Medlock was the aggressor during the altercation. The court then found that Medlock violated his probation by committing an assault while on probation. The district court revoked Medlock's probation and imposed his underlying sentence of 12 months in prison in the Kansas Department of Corrections. In the journal entry of the probation violation hearing, the court checked the box indicating that probation was revoked based on the exception for the commission of a new crime and noted that Medlock "committed assault/battery on day of original sentencing."

4

Medlock appealed the district court's decision to revoke his probation.

DISCUSSION

On appeal, Medlock contends there was insufficient evidence to prove he assaulted J.D. and thus to revoke his probation. Once a defendant is granted probation with conditions, they are entitled to remain on probation under those conditions unless the court finds that they failed to satisfy the terms of probation. *State v. Hurley*, 303 Kan. 575, 581-82, 363 P.3d 1095 (2016). After finding a probation violation, the district court has wide discretion to impose sanctions; but under the applicable statutory standard here, the district court is generally required to impose an intermediate sanction before revoking probation. K.S.A. 22-3716(c)(7).

However, several exceptions permit the court to revoke Medlock's probation without first imposing an intermediate sanction—including when "the offender commits a new felony or misdemeanor while the offender is on probation." K.S.A. 22-3716(c)(7)(C). At the revocation hearing, the district court explained that it revoked Medlock's probation based on a finding that "by a preponderance of the evidence there is at least an assault by Mr. Medlock towards [J.D.]," and that "by a preponderance of the evidence . . . Mr. Medlock failed to remain law abiding, which is a condition[ ] of his probation." In its journal entry, the district court checked the box indicating that it revoked Medlock's probation under K.S.A. 22-3716(c)(7) without first imposing an intermediate sanction because it found that Medlock committed a new crime.

Before revoking probation, the State must establish that the probationer violated the terms of probation by a preponderance of the evidence, which means that the violation is more probably true than not. *In re B.D.-Y.*, 286 Kan. 686, 691, 187 P.3d 594 (2008) (definition of preponderance); *State v. Gumfory*, 281 Kan. 1168, 1170, 135 P.3d 1191 (2006) (commission of a violation must be established by a preponderance of the

evidence). When a district court applies a preponderance of the evidence standard to make factual findings, this court's review is limited to determining whether substantial competent evidence supports the district court's findings. *State v. Inkelaar*, 38 Kan. App. 2d 312, 315, 164 P.3d 844 (2007). Substantial competent evidence refers to legal and relevant evidence that a reasonable person could accept as being adequate to support the conclusion. *State v. Smith*, 312 Kan. 876, 887, 482 P.3d 586 (2021).

Upon finding that the defendant violated the terms and conditions of probation, the district court has wide discretion to determine the appropriate sanction—consistent with the applicable statutory scheme—including revocation of probation and imposition of the underlying sentence. See *State v. Tafolla*, 315 Kan. 324, 328, 508 P.3d 351 (2022); *State v. Horton*, 308 Kan. 757, 760-61, 423 P.3d 548 (2018). This court reviews a district court's discretionary decision to revoke probation for an abuse of discretion, which occurs when the court's decision is (1) arbitrary, fanciful, or unreasonable; (2) based on a legal error; or (3) based on factual error. *Tafolla*, 315 Kan. at 328. As the challenger, Medlock bears the burden of establishing such abuse of discretion. 315 Kan. at 328.

On appeal, Medlock challenges the district court's factual finding that he violated his probation by committing a new crime of assault—not the district court's application of the probation statutes or the reasonableness of its probation revocation given a sufficiently supported finding that he committed assault. Therefore, this court must determine whether substantial competent evidence—that is, legal and relevant evidence that a reasonable person could accept as adequate to support a conclusion—supports the district court's finding that Medlock assaulted J.D. See *Smith*, 312 Kan. at 887; see also *Inkelaar*, 38 Kan. App. 2d at 315.

*Substantial competent evidence supports the district court's finding that Medlock committed assault.*

In Kansas, assault is defined as "knowingly placing another person in reasonable apprehension of immediate bodily harm." K.S.A. 21-5412(a). Assault has two parts. First, the State must prove the defendant had the culpable mental state—mens rea—to knowingly commit the crime. Second, the State must prove the victim had the requisite apprehension of immediate bodily harm. Medlock concentrates his argument on the lack of evidence that the victim feared for his own bodily harm. Circumstantial evidence, which is any evidence that tends to prove a fact in issue by proving the events or circumstances which afford a basis for a reasonable inference of the occurrence of the fact in issue, can be used to support a conviction. See *State v. Douglas*, 313 Kan. 704, 716, 490 P.3d 34 (2021) (citing *State v. Corbett*, 281 Kan. 294, Syl. ¶ 6, 130 P.3d 1179 [2006]).

The law requires that Medlock acted "knowingly" to put J.D. in fear of immediate bodily harm. K.S.A. 21-5412(a) (defining assault). A person acts knowingly with respect to the nature or circumstances of their conduct "when such person is aware of the nature of such person's conduct or that the circumstances exist" and a person acts knowingly with respect to the result of their conduct "when such person is aware that such person's conduct is reasonably certain to cause the result." K.S.A. 21-5202(i). A person also acts knowingly when they act intentionally, which occurs when it is the person's "conscious objective or desire to engage in the conduct or cause the result." K.S.A. 21-5202(h) (defining what it means to act intentionally); see K.S.A. 21-5202(c) ("If acting knowingly suffices to establish an element, that element also is established if a person acts intentionally.").

Medlock's encounter with J.D. occurred just a few hours after he was released on probation for his conviction of attempted aggravated assault. The conviction for which

7

Medlock was newly on probation involved Medlock's erratic behavior, which included banging a machete against the door and glass of a hotel in a way that placed an individual inside in fear. That conviction shows Medlock had recent experience where his behavior remarkably similar to his actions at the salon had placed an individual in fear and resulted in criminal charges. Medlock's erratic behavior and yelling caused the salon occupants to lock themselves inside. The testimony at the probation hearing described that Medlock yelled and attempted to physically fight with J.D. all while people locked themselves in a business to avoid him. This together—especially when it occurred mere hours after Medlock's release from jail on an aggravated assault for similar behavior—supports an inference that Medlock acted knowingly or intentionally regarding the nature and result of his conduct. Moreover, there was no evidence disputing that Medlock acted with the culpable mens rea.

In addition to showing that Medlock acted with the requisite mental state, the State must show that the victim had a subjective apprehension of immediate bodily harm and that such apprehension was objectively reasonable. *State v. Angle*, No. 116,152, 2017 WL 4216161, at *3 (Kan. App. 2017) (unpublished opinion). The Kansas Supreme Court has explained that the apprehension of bodily harm must be the fear of the victim—the person who is assailed—for his or her own safety. *State v. Warbritton*, 215 Kan. 534, 537, 527 P.2d 1050 (1974). In *Warbritton*, an example upon which Medlock relies, the court found that the victim's testimony undermined an inference that she was in reasonable apprehension of bodily harm to herself:

> "We might agree that the atmosphere was heavily fraught with danger and was
> threatening enough to have induced apprehension on the part of [the victim] for her
> personal safety. However, [the victim] consistently denied while she was on the stand
> that she had any fear for herself; that she thought Mr. Warbritton would not harm her.
> She testified she was not scared for herself because she knew the way she was holding
> the baby, that the defendant would hit it instead of herself, if he pulled the trigger. In the
> face of positive testimony such as this we cannot say, as urged by the district attorney,

8

that the circumstances were such that, as a matter of law, [the victim] had fear for herself." 215 Kan. at 537-38.

In determining whether substantial competent evidence supports the district court's findings, this court must accept as true the evidence and all the reasonable inferences drawn from the evidence which support the district court's findings. *Gannon v. State*, 298 Kan. 1107, 1175-76, 1179, 319 P.3d 1196 (2014) (citing *Unruh v. Purina Mills*, 289 Kan. 1185, 1196, 221 P.3d 1130 [2009]). While J.D. testified that he was afraid for his wife's and daughter's safety—and that alone cannot establish J.D. had apprehension of his own immediate bodily harm—it can be viewed with other evidence to draw a reasonable inference that J.D. was also in reasonable apprehension of his own bodily harm.

While J.D. testified that he initially thought Medlock's ranting about the Illuminati was "kind of a joke," he clarified that "in the context of him being in the salon it became very serious." J.D. also stated that when he encountered Medlock, he "didn't want to get hurt" and that the event was "scary." Additionally, though J.D. never specifically testified that Medlock placed him in fear or apprehension of immediate bodily harm, he never testified to a lack of fear. Unlike in this case, the victim in *Warbritton* testified that that she did not fear for herself and thought the defendant would not harm her. See 215 Kan. at 537-38. J.D.'s expression of concern for his wife and daughter does not mean he was unafraid of immediate bodily harm to himself. Additionally, J.D.'s decision to approach Medlock to "direct" him away from customers does not mean that he was not in fear of immediate bodily harm. In fact, after Medlock "got handsy" with J.D., the two became physically entangled on the ground, which required onlookers to intervene. Medlock's erratic behavior intensified to the point of a physical altercation. The situation was tense and unpredictable. Taken together, the evidence supports the district court's finding that J.D. had a subjective apprehension of immediate bodily harm to himself and that his apprehension was objectively reasonable.

9

A finding by a preponderance of the evidence that a probationer committed a new crime requires more than merely being charged for that new crime. See *State v. Lloyd*, 52 Kan. App. 2d 780, 783-84, 375 P.3d 1013 (2016) (preponderance of evidence is a higher standard than the probable cause required to be bound over for trial); *State v. Roop*, No. 124,208, 2022 WL 4282154, at *3 (Kan. App. 2022) (unpublished opinion) (criminal complaint alone not enough to support finding of commission of a new crime). However, proof beyond a reasonable doubt is not required. *State v. Rasler,* 216 Kan. 292, 295, 532 P.2d 1077 (1975); see *Gumfory*, 281 Kan. at 1170 (a probation violation is established by a preponderance of the evidence). But see *State v. Aguirre*, 313 Kan. 189, 209, 485 P.3d 576 (2021) (when evaluating whether sufficient evidence supports a criminal conviction, an appellate court views the evidence in the light most favorable to the State to determine whether rational jurors could have found the defendant guilty beyond a reasonable doubt). Additionally, a criminal conviction is not required to prove that the probationer committed a new crime justifying probation revocation under K.S.A. 22-3716(c)(7). See *Inkelaar*, 38 Kan. App. 2d at 315; see also *Rasler,* 216 Kan. at 295-96 (holding a probation violation was supported by sufficient evidence regardless of the outcome of the defendant's appeal of the conviction forming the basis of the violation).

The preponderance standard fits the circumstances because a court's finding that Medlock committed a new crime does not result in a new criminal conviction but rather a probation violation related to his existing conviction. Even if the evidence of J.D.'s apprehension was insufficient to support a conviction for criminal assault, it is sufficient to sustain a probation revocation under the preponderance of the evidence standard. See, e.g., *Inkelaar*, 38 Kan. App. 2d at 316 (evidence of new criminal charges, together with evidence connecting the probationer to new charges, was substantial competent evidence to support the district court's finding that the probationer committed theft).

CONCLUSION

There is substantial competent evidence that the State proved by a preponderance of the evidence that Medlock committed a new crime of assault while on probation. Finding no error, the district court's revocation of Medlock's probation is affirmed.

Affirmed.